[No. B150627. Second Dist., Div. One. Nov. 6, 2001.]

MARK POLLOCK, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Real
Party in Interest.

## COUNSEL

Cheong, Denove, Rowell, Antablin & Bennett, Wilkie Cheong and Mary L. Wachsmith for Petitioner.

No appearance for Respondent.

Cotkin, Collins & Ginsburg, James P. Collins, Jr., Ellen M. Tipping and Terry L. Kesinger for Real Party in Interest.

## OPINION

**VOGEL (MIRAM A.), J.**—In *Colonial Life & Accident Ins. Co. v. Superior Court* (1982) 31 Cal.3d 785 [183 Cal.Rptr. 810, 647 P.2d 86], our Supreme Court held that, in an action alleging an insurer's bad faith refusal to pay benefits under an *accident policy*, the plaintiff was entitled to discover the names and addresses of other claimants whose *accident claims* had been adjusted by the person who had adjusted the plaintiff's claim. In the case now before us, the trial court held that, in an action alleging an insurer's bad faith termination of benefits under a *disability policy*, the plaintiff is *not* entitled to discover the names and addresses of other claimants whose *psychiatric disability claims* had been denied during a four-year period. We agree with the trial court that where, as here, the disclosure of a claimant's identity necessarily discloses the claimant's psychiatric condition, the claimant's psychotherapist-patient privilege trumps the plaintiff's right to use this particular form of discovery. For this reason, we deny the plaintiff's petition for a writ of mandate.

### BACKGROUND

Mark Pollock sued Northwestern Mutual Life Insurance Company for breach of contract and breach of the implied covenant of good faith and fair

dealing, alleging that Northwestern had wrongfully terminated the payments due to Pollock under a disability income policy. In conclusory terms, Pollock alleges that he sought "medical treatment for depression," that his depression "resulted in his total disability" under the terms of his policy, that he submitted a claim to Northwestern, and that Northwestern "accepted and approved" his claim and "commenced making payments" under the policy but then "wrongfully and totally terminat[ed]" Pollock's benefits. Northwestern answered and discovery ensued.

A few months later, Pollock served special interrogatories in which he asked Northwestern a series of questions about the number of other Northwestern insureds who were "receiving psychiatric disability benefits" and then were "denied further psychiatric disability benefits" over a four-year period. Ultimately, those questions were answered, but Northwestern refused to answer an interrogatory that demanded: "State the name and address of each insured whom you denied a psychiatric disability claim from January 1, 1997 to the present." Northwestern objected, claiming that disclosure of the claimants' names and addresses would violate their privacy rights.

In response, Pollock offered to stipulate that all information about the claimants would be subject to a protective order, and that his contact with the claimants would be limited to a form letter approved by Northwestern. (See *Colonial Life & Accident Ins. Co. v. Superior Court, supra,* 31 Cal.3d 785.) Pollock's proposed letter, to be sent on his lawyers' letterhead, is set out in the margin.[1] Northwestern rejected Pollock's proposal.

---

[1]"Dear [Insured]:

"This law firm represents Mr. Mark Pollock . . . , who has sued the Northwest[ern] Mutual Life Insurance Company . . . . Please be advised that you are <u>not</u> a party to this lawsuit. We believe that there may be information contained within your claim file that may be relevant to the issues in [Pollock's] case.

"This office is seeking information about other psychiatric claims handled by Northwest[ern] Mutual, and the manner, method and procedures used in the adjustment of individual disability income insurance claims. Pursuant to the Court's Order in the above-entitled lawsuit, you have been identified as an insured whose psychiatric claim for individual disability benefits in California was denied sometime between January 1, 1997 and December 31, 2000.

"The California Constitution and the California Insurance Code requires that this office obtain your consent before any information in your claim file may be released. If you wish to give your consent to the release of the contents of your claim file to this office under the conditions specified herein, please carefully review, date and sign the attached form entitled 'Consent to Release Insurance Information' and return it to this office in the enclosed pre-paid return envelope. An additional copy of the consent form is enclosed for your records. If you consent, the form must be dated by you because by statute, your claims file can only be reviewed under said consent within one year from the date the consent is signed. In addition, a protective order has been issued by the court, restricting disclosure of information obtained from your file, and limiting its use to the trial and trial preparation of this lawsuit. If

Pollock then filed a motion to compel Northwestern to provide the claimants' names and addresses so that Pollock's lawyer could send his proposed letter. Northwestern opposed the motion and presented the declaration of F. David Rudnick, M.D., Ph.D. This is what Dr. Rudnick had to say: "In my opinion, . . . it would be an egregious breach of the patient's right to confidentiality for Northwestern . . . to reveal to anyone the names and addresses of those persons who have submitted claims for psychiatric disability. Patients seeking psychiatric help continually express to me their reluctance to seek psychiatric treatment because of the stigma they feel is attached to the existence and treatment of mental conditions. They expect and are entitled to receive absolute confidentiality regarding their condition.

"I believe that a patient who has sought treatment from a psychiatrist or a psychotherapist, has made a disability claim based on a mental condition, and who later learns that his identity as a psychiatric patient and claimant has been revealed to third parties, would be at significant risk of having old wounds re-opened and of being re-traumatized by learning of the disclosure. [¶] Further, I believe that an insurer who reveals such information to third parties would be exposed to allegations by the patients whose confidentiality was violated that the disclosure triggered additional mental and emotional problems and caused further injury.

"Because of the extremely sensitive and confidential nature of psychiatric treatment, I also believe that there is a danger of harm even if the insurance company were to do nothing more than advise the claimant that it has been asked to seek his permission to reveal his name to others. Accordingly, it is my opinion that many individuals would be extremely upset by such a contact and this could result in an aggravation of their problems, a worsening of their condition, and even a renewal of their disability claim."

Although Pollock filed a reply, he did not offer any medical evidence to dispute Dr. Rudnick's opinion (or any evidence at all). Instead, Pollock objected to the trial court's consideration of Dr. Rudnick's declaration, contending it was speculative and conclusory, and that it lacked foundation.

The trial court denied Pollock's motion, noting that Pollock's proposed letter would necessarily confront the claimants with the fact that their psychiatric condition had been revealed. When Pollock's lawyer asked the trial court for an alternative "solution" or "suggestion," the court refused to

you do not sign, date and return the consent form, your file will not be provided to this office for review.

"Thank you for your courtesy and cooperation. If you have any questions please call me at the number indicated on this letterhead, or counsel for Northwest[ern] Mutual . . . ."

speculate, left it to the lawyers to do the lawyering, and (quite properly) limited its ruling to the motion before it. Pollock then asked us to order the trial court to order Northwestern to disclose the names and addresses so that Pollock's lawyer could send the proposed letter. We issued an order to show cause and set the matter for hearing.

## DISCUSSION

### A.

In *Colonial Life & Accident Ins. Co. v. Superior Court, supra,* 31 Cal.3d 785, a bad faith case arising out of Colonial's refusal to pay a claim made under an accident policy, the trial court ordered Colonial's claims adjuster to produce the names and addresses of all persons whose claims for benefits under Colonial's policies were assigned to that adjuster for settlement, and approved a letter to be sent by the plaintiff's lawyer to those individuals to request their consent to the release of their records. (*Id.* at p. 789.) In the mandate proceedings before the Supreme Court, Colonial asked for orders that would have prevented plaintiff's counsel from seeking to represent other claimants. (*Id.* at pp. 789-790.) But Colonial did "not contend that the discovery ordered by the trial court was embarrassing or oppressive. [Citation.]" (*Id.* at p. 789, fn. 4.)

The Supreme Court rejected Colonial's arguments, found the discovery relevant, held that it was entirely proper for the plaintiff's lawyer to contact other Colonial claimants through the procedure devised by the trial court, and refused to assume that, faced with an opportunity to solicit clients in the course of legitimate discovery, the plaintiff's lawyer would ignore his ethical obligations. (*Colonial Life & Accident Ins. Co. v. Superior Court, supra,* 31 Cal.3d at p. 794.)

Pollock contends his proposed letter is within the parameters of *Colonial Life.* Northwestern disagrees and so do we.

### B.

The names of Northwestern's claimants are not discoverable because the disclosure of the names would reveal not only the identity of the claimants but also the nature of their ailments ("psychiatric disability"). The submission of a claim to Northwestern is a condition precedent to coverage under a policy purchased by the claimant and, therefore, a necessity. For this reason, the psychotherapist-patient privilege is not waived by the claimant, and it cannot be waived by the insurer. (Evid. Code, §§ 912, subd. (d), 992;

*Blue Cross v. Superior Court* (1976) 61 Cal.App.3d 798, 801-802 [132 Cal.Rptr. 635] [an insured who sued her health care insurer for wrongful refusal to pay medical expenses incurred for psoriasis treatment was not entitled to discover the names of other insureds who had filed claims for psoriasis treatment]; *Smith v. Superior Court* (1981) 118 Cal.App.3d 136, 140-142 [173 Cal.Rptr. 145] [the disclosure of the identity of a psychotherapist's patients inevitably reveals the fact that the patients suffer from mental or emotional problems, and is therefore not discoverable]; and see *Rosso, Johnson, Rosso & Ebersold v. Superior Court* (1987) 191 Cal.App.3d 1514, 1519 [237 Cal.Rptr. 242]; *County of Alameda v. Superior Court* (1987) 194 Cal.App.3d 254, 258-263 [239 Cal.Rptr. 400].)

## C.

Although the trial court's ruling withholds from Pollock "the most direct means of ascertaining" the information he is after, it by no means precludes other approaches. (See *Smith v. Superior Court, supra,* 118 Cal.App.3d at p. 142.) We note with interest Dr. Rudnick's opinion that, in the psychiatric treatment context, "there is a danger of harm even if the insurance company were to do nothing more than advise the claimant[s] that it has been asked to seek [their] permission to reveal [their] name[s] to others." Since Pollock didn't suggest any alternative approach, the trial court had no reason to consider whether a letter from an insurer to its own insured could be harmful if the letter made it clear (in plain English) that *nothing* had been or would be disclosed to *anyone* and that it was up to the claimant to decide whether to contact Pollock's lawyer. (Cf. *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656-658 [125 Cal.Rptr. 553, 542 P.2d 977]; *Sehlmeyer v. Department of General Services* (1993) 17 Cal.App.4th 1072, 1080-1081, fn. 8 [21 Cal.Rptr.2d 840]; *Planned Parenthood Golden Gate v. Superior Court* (2000) 83 Cal.App.4th 347, 358-370 [99 Cal.Rptr.2d 627].)

Accordingly, the only issue before us is the propriety of the trial court's order denying Pollock's motion to compel Northwestern to disclose the names and addresses of the claimants. Since the disclosure of those names would necessarily reveal the existence of the claimants' psychiatric condition, the motion was properly denied.

### DISPOSITION

The petition is denied. The parties are to pay their own costs of these writ proceedings.

Spencer, P. J., concurred.

**MALLANO, J., Concurring.**—I agree with the majority opinion save for the first paragraph of part C in which it suggests an alternative approach to contacting claimants who were denied psychiatric disability benefits. (Maj. opn., *ante*, at p. 822.)

Dr. F. David Rudnick, M.D., Ph.D., in an unrefuted declaration, states that "[b]ecause of the extremely sensitive and confidential nature of psychiatric treatment, [he believes] that there is a danger of harm even if the insurance company were to do nothing more than advise the claimant that it has been asked to seek his permission to reveal his name to others. Accordingly, it is [Dr. Rudnick's] opinion that many individuals would be extremely upset by such a contact and this could result in an aggravation of their problems, a worsening of their condition, and even a renewal of their disability claim."

Pollock has not offered a counterdeclaration. I, in fear that psychiatric patients might suffer harm, am unwilling to suggest an alternative approach that flies in the teeth of Dr. Rudnick's opinion.