[No. B228853. Second Dist., Div. One. Apr. 13, 2011.]

LOS ANGELES GAY & LESBIAN CENTER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GEORGE BOMERSHEIM et al., Real Parties in Interest.

## Counsel

Cole Pedroza, Kenneth R. Pedroza, Matthew S. Levinson; Carroll, Kelly, Trotter, Franzen & McKenna and David P. Pruett for Petitioner.

No appearance for Respondent.

Law Office of Nicholas A. Boylan, Nicholas A. Boylan and Anika S. Padhiar for Real Parties in Interest.

## Opinion

**JOHNSON, J.**—In this class action, defendant Los Angeles Gay & Lesbian Center (the Center) petitions this court to order the trial court to set aside a class notice that provides for opt-out notice to patients of the Center who mistakenly received from the Center the wrong medication for syphilis. The Center argues that in order to protect the privacy rights of these unnamed class members, and due to the physician-patient privilege, the class should be opt-in because such a mechanism would protect those rights—only those patients who agreed to opt in would be subject to disclosure and discovery of their names, medical records and condition. The Center also contends the trial court's subsequently entered protective order insufficiently protects the patients' privacy rights.

We conclude that the trial court did not err in establishing an opt-out class, but that it erred in ordering the Center to disclose the class members' names and addresses to plaintiffs' counsel. We therefore grant the petition in part and deny in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1. *Background Facts*

 (a) *Treatment of Class Members for Syphilis*

The Center is a nonprofit organization that provides medical services in Los Angeles County to the gay, lesbian, bisexual and transgender communities. The Center provides free testing and treatment services for sexually transmitted diseases to this community. From January 1999 to March 2004 the Center administered Bicillin C-R to approximately 663 patients who had confirmed or suspected syphilis infections, although Bicillin C-R is not recommended for such use. The proper formulation for treating syphilis is Bicillin L-A. Both medications contain the same amount of penicillin, however, Bicillin C-R is a mixture of short- and long-acting penicillin, while Bicillin L-A is composed wholly of long-acting penicillin.

The Center learned of the mistake in March 2004, and in coordination with the Los Angeles County health department and the Centers for Disease Control and Prevention, the Center drafted and issued press releases to advise the public of the error and attempted directly to contact every patient, either by telephone or with a letter, to offer retreatment and retesting to those patients who had received improper medication. The Center offered retesting and retreatment regardless of whether there was evidence of treatment failure. The Center used a standard protocol to retest and retreat; no distinction was made based on possible reinfection, reexposure, HIV status, or other individual circumstance. As a result, approximately 442 patients returned to the Center and were offered retesting and retreatment regardless of their medical condition or the retesting results. Retesting involved a blood draw and, in 19 cases, a lumbar puncture; retreatment involved receiving between one and three intramuscular injections of Bicillin L-A. The Center was not able to locate all of the patients given the wrong medication.

Class plaintiffs George Bomersheim, Rox Brassfield, Raymundo Aguilar, and Odie Rauch were treated with Bicillin C-R and retested and retreated with Bicillin L-A.[1] They filed their complaint on March 11, 2005, as representative plaintiffs, seeking to represent "[a]ll California residents who, from 1999 to 2004, received from CENTER an improper dosage of penicillin for the treatment of syphilis, specifically Bicillin C-R, rather than Bicillin L-A, and who therefore underwent the retreatment process, whether at [the Center] or elsewhere." The operative fifth amended complaint seeks damages for negligence and breach of implied warranty.

---

[1] Named plaintiff Rox Brassfield died after the action was commenced.

(b) *February 22, 2006 Order Regarding Notice to Putative Class Members*

During discovery, class plaintiffs sought production of documents from the Center, but the Center objected on the grounds of physician-patient privilege, privacy grounds, and the Health Insurance Portability and Accountability Act of 1996 (HIPAA; Pub.L. No. 104-191 (Aug. 21, 1996) 110 Stat. 1936) (45 C.F.R. § 164.500 et seq. (2010)).

In February 2006, the court entered an order permitting class plaintiffs to obtain medical information from the Center. Class plaintiffs sought the complete medical records of those patients who were treated for syphilis with the wrong medication; some of these patients were HIV positive or had other sexually transmitted diseases. The Center had objected to discovery on the basis of the patients' privacy rights under both California and federal law. In order to balance the patients' privacy rights with the class members' need for discovery, the court ordered that:

(1) The Center prepare an alphabetized list of all those who may be putative class members, and provide the name, last known address, date on which they were first identified as having syphilis, the date they first received treatment for syphilis at the Center with any formulation of Bicillin, the date of any retesting for syphilis, whether they tested positive, and the date or dates of retreatment for syphilis. The information in response to these items was not to be limited to retesting and treatment, but was to include any data in their medical records as maintained by the Center. In addition, the Center was ordered to prepare an identical list that omitted the name and address of the patient, but which contained a four-digit identifying number.

(2) The Center was to send a letter to the putative class members advising them that they may be members of a class proposed to be certified by the court, advising them of the nature of the claims asserted and remedies sought, and advising them that the class plaintiffs were seeking a release of their medical records. The letter should offer the putative members the following options:

(a) Each class member could refuse to permit disclosure of his or her medical information, in which case he or she would be excluded from the class;

(b) Each class member could consent to the release of his or her name and address, in which case he or she might be contacted by the parties' counsel, and membership in the class was unclear;

(c) Each class member could consent to the release of his or her medical records, limited to information relating to the diagnosis and treatment of syphilis, in which case he or she would be considered for inclusion in the class; or

(d) Each class member could consent to release of his or her respective full medical records, in which case he or she would be included in the class and might be able to demonstrate additional damages particular to his or her case.

The letter would advise the putative class members that if they were included in the class, their names and the fact they had syphilis might become part of the public record. The letter would further advise the putative class members that while the parties would attempt to keep confidential prior to trial any released medical information, at trial such information might be disclosed. The letters were to contain a form that the putative class members could return to the Center and which would remain in the Center's custody. The Center would maintain separate lists (one with identifying information and one without) indicating those class members who had returned the form.

On September 15, 2006, the court issued a second order to clarify ambiguities in the February 2006 order, noting that compliance with the first order had been minimal.

Class plaintiffs moved for class certification in August 2007. (*Bomersheim v. Los Angeles Gay & Lesbian Center* (2010) 184 Cal.App.4th 1471, 1478 [109 Cal.Rptr.3d 832] (*Bomersheim I*).)

The trial court denied the certification motion on April 16, 2008, finding no community of interest existed because individual issues of causation and damages predominated over common issues of duty and breach, and held that the class action vehicle was not a superior method of resolving the claims of putative class members. We reversed the order denying class certification, finding that there were common issues of proof on duty, breach and causation. The case was remanded to the trial court with directions to certify the class. (*Bomersheim I, supra*, 184 Cal.App.4th at pp. 1488–1489.)

### 2. *Opt-out Class Certification Order and Protective Order*

On remand, on or about September 30, 2010, class plaintiffs filed a proposed order regarding class certification. The order proposed an opt-out class and ordered defendant to compile and provide to class counsel within 10 days a master list consisting of the most current known names, addresses, phone numbers, and e-mail addresses of class members.

The Center objected to class plaintiffs' proposed order, arguing that an opt-out mechanism and disclosure of its patient information would violate the physician-patient privilege (Evid. Code, §§ 990–1007) and would also independently violate the patients' constitutional right of privacy (Cal. Const., art. I, § 1), a privacy right heightened by the nature of the patient information at issue (syphilis exposure, HIV status, and treatment at the Center). Instead, the Center argued that the class notice should utilize an opt-in mechanism requiring class members to affirmatively consent to join the action. According to the Center, the opt-in mechanism would comport with statutory and constitutional privacy mandates by making disclosure as limited as possible and narrowly tailored, goals that could be accomplished by requiring affirmative consent to the disclosure of the patients' medical information.

On October 14, 2010, at the hearing on the class notice, class plaintiffs argued an opt-in mechanism was contrary to California law, citing *Hypertouch, Inc. v. Superior Court* (2005) 128 Cal.App.4th 1527 [27 Cal.Rptr.3d 839] (*Hypertouch*). The Center argued that due to the sensitive medical nature of the claims at issue, the court should utilize an opt-in mechanism.

On October 24, 2010, the trial court entered its order granting class certification and designating the class notice as opt-out. The court ordered the Center to, within 15 days, compile and provide to the class plaintiffs a master list of the names, addresses, phone numbers and e-mails of class members. The court also held that the parties were specifically directed to address what information should be given in the class action notice regarding possible disclosure of their medical records.

On November 5, 2010, the class plaintiffs moved for approval of their notice to class members and for entry of a related protective order. The Center filed the instant petition for writ of mandate on November 17, 2010, asking this court to vacate the trial court's October 24, 2010 order and, pending our ruling on the writ petition, requesting a stay of the court's October 24, 2010 order. We issued a stay of the action on November 17, 2010; after plaintiffs advised the court there was a pending motion on the form of notice to class members and a protective order, the stay was lifted solely to determine the form of the class notice and protective order.

Thereafter, on December 2, 2010, the Center opposed the proposed notice, contending it was misleading because the notice stated the class members' privacy rights and health care were protected, when in fact the class members' health care was jeopardized because the Center had no continuing duty to treat any of the patients who joined in the class; further, the notice failed to expressly inform putative class members that they would waive their

patient-physician privilege and other privacy rights by proceeding in this case; and finally, the notice did not provide for administration by a neutral third party in order to protect confidential information. The Center also argued that the proposed protective order unduly restricted the Center's ability to defend the case because it would restrict its access to the class members' retreatment information as well as access to the class members to depose them concerning their emotional distress damages.

In reply, the class plaintiffs revised the notice and protective order to address the Center's concerns. They contended that an opt-in class, which was not sanctioned by California law, would have the effect of destroying the class. Class plaintiffs in particular argued the Center had already employed a standardized approach to notifying the Center's patients of erroneous dosages through the targeted form letter and phone calls, used a standard protocol in treating the patients, and therefore treated all the class members the same. For this reason, extensive discovery into the class members' medical history would not be necessary, and thus an opt-in class was unnecessary. Further, with respect to the protective order, the Center's proposed warnings that the Center could stop treating them for other health care matters would have the effect of imploding the class because the Center's patients could not afford to seek treatment elsewhere. Class plaintiffs also argued that the protective order did not unduly restrict the Center's ability to defend the action; the disclosure of the information requested did not violate HIPAA or California's Confidentiality of Medical Information Act (CMIA) (Civ. Code, § 56.10, subd. (b)(1)), and the physician-patient privilege did not apply.

At the hearing on December 15, 2010, the court asked class plaintiffs to clarify whether they sought damages based upon the pain associated with retreatment or based upon the emotional distress of retesting and retreatment. Class plaintiffs admitted that their discovery in the case had disclosed that none of the patients given the wrong medicine had developed syphilis, and neither party asserted that any class plaintiff contracted syphilis as a result of improper treatment. The court found that a simple emotional distress claim or a medical malpractice claim based simply on retesting and retreatment would not implicate broad privacy issues, while other ailments (e.g., HIV) that the patients might have, would implicate privacy interests. The Center argued that the emotional distress damages issue was more complicated because some of the patients were receiving treatment for HIV.

The parties discussed the proposed protective order to address privacy issues raised by the Center, and the use of a third party administrator to send notices. The parties intended the protective order to restrict the use of medical information, and that they would use a numbering system to ensure anonymity of class members unless discovery necessitated the disclosure of their

respective identities. However, the court noted that "[a]t some point we can add the names to the numbers if we need to do discovery down the line," and acknowledged that some information would be made public at trial, stating, "Obviously, if we have somebody on the stand and they take the stand, they will probably have a name." At the conclusion of the hearing, the court requested class plaintiffs to submit the proposed notice and protective order to it, at which time it would rule on them.

On December 17, 2010, the court approved the proposed notice and protective order submitted after the December 15, 2010 hearing. The notice provided it was addressed to: "ALL CALIFORNIA RESIDENTS WHO, DURING THE PERIOD 1999 THROUGH 2004, RECEIVED FROM [THE CENTER] AN IMPROPER DOSAGE OF PENICILLIN FOR THE TREATMENT OF SYPHILIS, SPECIFICALLY BICILLIN C-R RATHER THAN BICILLIN L-A, AND WHO UNDERWENT THE RE-TREATMENT PROCESS, WHETHER THE RE-TREATMENT PROCESS OCCURRED AT [THE CENTER] OR ELSEWHERE."

The notice advised potential class members that they would be included in the class, and they must opt out of the class action in order to preserve their individual claims against the Center. The notice further provided that with respect to the class members' privacy, "At this time, the Court has entered a Protective Order which protects your personal privacy rights with respect to your medical information, medical conditions and medical records. For example, in any public filing in the course of this case, according to the Court's Order, you may not be referred to by your name or other identifying features, but may only be referred to by a number that has been or will be assigned to identify you. This Order is subject to modification, by further Court Order, as this action proceeds. You may contact Class Counsel to discuss any questions about privacy protection or any other concerns you may have."

The protective order provided that "[u]ntil further order of the Court, in any and all public filings, each class member and his Medical Information[2] shall be referred to only by the Identifying Number[3] assigned. Under no circumstances shall a class member and/or his Medical Information be

---

[2] "Medical Information" is defined in the protective order as "all medical records, documents, medical reports, including doctor's entries, nurses' charts, progress reports, physical therapy records, pathology reports, x-ray reports, lab reports, case history, emergency room records, admitting sheets, special tests, inpatient and outpatient records, and any sign in sheets, including but not limited to any records/documents that may be stored digitally and/or electronically pertaining to the treatment, diagnosis, prognosis, condition, discharge, affecting or relating to a class member's medical and/or health care history."

[3] "Identifying Number" is defined as "the number assigned to each class member for identification purposes, pursuant to the Court's previous Order."

identified or referred to in any other manner in any public filing. No other identifying [personal] information of class members shall be included in any public filing." The protective order limited disclosure of medical information to certain specific persons, including counsel of record; independent experts; consultants; persons who had authored or received the medical information prior to the litigation; the court and its personnel, including deposition and court reporters and their employees; the producing or receiving party and their officers, directors, partners, employees, and managing agents "to the extent being necessary by that party or parties, solely for the prosecution, defense or settlement of this litigation"; and "any other person designated by the Court in this Litigation upon such terms as the Court deems proper." Persons given access to medical information would be required to confirm their understanding of the protective order and abide by its terms. With respect to subpoenas, the protective order provided that "[i]f any Party[4] receives a subpoena seeking or Court order in another matter requiring the production of any Medical Information Disclosed, Furnished, or Submitted by another Party, the Party receiving the subpoena or Court order shall give notice of such receipt to the Party who has Disclosed, Furnished, or Submitted the Medical Information within five (5) days by facsimile." At the conclusion of the litigation, all medical information would be returned to producing party's counsel, or upon written consent, be destroyed.

## DISCUSSION

The Center argues that an opt-in class notice mechanism is permissible and necessary in this case, and urges us to ignore *Hypertouch* and other cases holding California law does not sanction opt-in class actions in the absence of Supreme Court precedent on the issue. The Center further argues that the protective order and class notice approved by the court after the filing of its writ petition in this matter do not solve the problems of nonconsensual disclosure of privileged and private information. We conclude the trial court did not err in finding the class notice in this case should be an opt-out notice, but erred in ordering the disclosure of the class members to the named plaintiffs in this action.

I. *Appropriateness of Writ Review.*

■ Writ relief is appropriate to correct an abuse of discretion by the trial court. (*City of King City v. Community Bank of Central California* (2005) 131 Cal.App.4th 913, 925 [32 Cal.Rptr.3d 384].) Conditions prerequisite to the

---

[4] "Party" is defined in the protective order as "any person or entity named as a party in this Litigation, class members, and any person or entity that may join or be joined in this Litigation in the future."

issuance of a writ are a showing there is no adequate remedy at law (in this case, no right to an immediate appeal) and the petitioner will suffer an irreparable injury if the writ is not granted. (*O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1439 [44 Cal.Rptr.3d 72].) Where, as here, an order will effectively undermine a privilege or infringe on privacy rights, review on appeal is deemed inadequate because reversal on appeal will not cure the disclosure of protected information. (See *Planned Parenthood Golden Gate v. Superior Court* (2000) 83 Cal.App.4th 347, 355 [99 Cal.Rptr.2d 627].) Further, review is appropriate where the order raises an issue of first impression of general importance to the legal community. (*Planned Parenthood Golden Gate*, at p. 355; *Toshiba America Electronic Components v. Superior Court* (2004) 124 Cal.App.4th 762, 767 [21 Cal.Rptr.3d 532].) This case presents the novel issue of whether an opt-out class is appropriate under California law where privacy rights and the physician-patient privilege will be severely compromised by the traditional opt-out procedure.

II. *Standard of Review.*

Our review of the type of notice to be given in this case is governed by the abuse of discretion standard. (*Hypertouch, supra,* 128 Cal.App.4th at p. 1536.) However, "[t]o the extent the trial court's ruling is based on assertedly improper criteria or incorrect legal assumptions, we review those questions de novo." (*Id.* at p. 1537.) Such discretion must be exercised within the confines of the law. " 'Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' " (*Toshiba America Electronic Components v. Superior Court, supra,* 124 Cal.App.4th at p. 768.)

III. *An Opt-out Class Is Proper and Notice May Be Given to Class Members Without Violating Privilege or Privacy.*

The Center argues that the opt-out class mechanism and protective order will disclose the class members' privileged and private information, and the class members should be required to take affirmative action to protect such interests. In selecting an opt-out class and entering the protective order, the trial court failed to adequately balance their privacy interests. The Center therefore argues an opt-in mechanism is permissible and necessary in this case because of the sensitive privacy issues at stake, distinguishing *Hypertouch* on that basis. The named plaintiffs argue that opt-in classes are not permissible under California law, citing *Hypertouch* and *Haro v. City of Rosemead* (2009) 174 Cal.App.4th 1067 [94 Cal.Rptr.3d 874] (*Haro*), and contend the physician-patient privilege does not apply because the class representatives have put the medical condition of the entire class at issue pursuant to Evidence Code section 996.

### A. *Opt-out Notice Is Proper.*

■ Code of Civil Procedure section 382, governing class actions, provides that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." (Code Civ. Proc., § 382.)[5] Generally, a class suit is appropriate where many "parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer." (*Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381, 385 [134 Cal.Rptr. 393, 556 P.2d 755].) Class actions establish a technique where the claims of many individuals can be resolved at the same time, and both eliminate the possibility of repetitious litigation while providing small claimants with a method of obtaining redress. (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 469 [174 Cal.Rptr. 515, 629 P.2d 23].)

However, Code of Civil Procedure section 382 does not contain procedures for conducting class actions. In 2002, California adopted a series of court rules specifically governing class actions.[6] The rules "apply to each class action brought under . . . Code of Civil Procedure section 382 until the court finds the action is not maintainable as a class action or revokes a prior class certification." (Cal. Rules of Court, rule 3.760(a).)[7]

■ Once "the class is certified, the court may require either party to notify the class of the action." (Cal. Rules of Court, rule 3.766(a).) In particular, rule 3.766 contemplates an opt-out form of notice by providing that the notice should advise potential class members whether they "may exclude themselves from the action" (Cal. Rules of Court, rule 3.766(b)(2)) and states that "[i]f class members are to be given the right to request exclusion from the class, the notice must include the following: [¶] . . . [¶] . . . [a] statement that the court will exclude the member from the class if the member so requests by a specified date . . . ." (Cal. Rules of Court, rule

---

[5] The Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.) and rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) (Rule 23) also authorize class actions, although neither is applicable here.

[6] The rules were originally numbered 1850 to 1861, and are now numbered 3.760 to 3.771. The Center has requested we take judicial notice of the Judicial Council/ Administrative Office of the Courts, Civil and Small Claims Advisory Committee, Summary Report to Members of the Judicial Council re: Uniform Statewide Rules for Class Actions (Sept. 12, 2001). Pursuant to Evidence Code sections 452, subdivision (c) and 459, we take judicial notice of this document.

[7] Prior to the adoption of the court rules, courts looked to Rule 23, governing class action procedures, for guidance. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 453 [115 Cal.Rptr. 797, 525 P.2d 701].) Presumably, we may still look to Rule 23 for guidance where California precedent is lacking. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 239–240 [110 Cal.Rptr.2d 145].)

3.766(d)(2).) Under California law, notice to class members in opt-out actions is required to bind absent class members. "The critical reason for notification of members of the class on whose behalf a class action has been brought is that notification makes possible a binding adjudication and an enforceable judgment with respect to the rights of the members of the class. Absent such notification no member of the class need be bound by the result of the litigation." (*Home Sav. & Loan Assn. v. Superior Court* (1974) 42 Cal.App.3d 1006, 1011 [117 Cal.Rptr. 485].)

■ Although California Rules of Court, rule 3.766 makes no provision for notices requiring each class member to opt in if he or she wishes to remain in the class, it does not expressly prohibit such notices. In *Hypertouch, supra,* 128 Cal.App.4th 1527, the defendant sent unsolicited advertising faxes in violation of federal law. The plaintiff sought through discovery the defendant's database of phone numbers, but the defendant objected on the grounds the database was a trade secret. (*Id.* at p. 1534.) After learning this database had been destroyed, the plaintiff obtained from a third party the names of those persons who had requested the defendant cease sending them faxes, and sought certification of a class consisting of such persons. (*Id.* at pp. 1534–1535.) Apparently concerned that not all class members would be notified of the action, the trial court approved a class notice that provided for opt-in membership in the class. (*Id.* at pp. 1535–1536.)

*Hypertouch* rejected this opt-in method of class notice because it conflicted with the applicable rules of court, and undermined the purpose of class actions. (*Hypertouch, supra,* 128 Cal.App.4th at p. 1536.) *Hypertouch* acknowledged that Code of Civil Procedure section 382 did not provide a procedural framework for class actions, although such actions must comply with the California Rules of Court relating to class actions (Cal. Rules of Court, rule 3.760 et seq.), which were enacted in 2002. (128 Cal.App.4th at pp. 1543–1544.) Relying on Rule 23 and the CLRA (Civ. Code, § 1750 et seq.) provisions relating to class actions, *Hypertouch* found an opt-in procedure inconsistent with the class action concept.

*Hypertouch* pointed out that legal jurisprudence over the past 30 years in the federal class action context under Rule 23 established that the use of an opt-in procedure contravened the express language of Rule 23 because class members should not be required to request inclusion in the class. (*Hypertouch, supra,* 128 Cal.App.4th at pp. 1545–1546, citing *Kern v. Siemens Corp.* (2d Cir. 2004) 393 F.3d 120 (*Kern*).) In *Kern,* the federal court specifically rejected an opt-in procedure as contrary to Rule 23, finding that the general consensus among federal courts was that the 1966 amendments to Rule 23 had the effect of prohibiting opt-in classes. *Kern* noted the prevailing rationale was that requiring individuals affirmatively to request inclusion in a

class action would result in " 'freezing out the claims of people . . . who for one reason or another, ignorance, timidity, unfamiliarity with business or legal matters, will simply not take the affirmative step.' " (*Kern, supra,* 393 F.3d at p. 124, quoting Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)* (1967) 81 Harv. L.Rev. 356, 397.) For such persons, the class action serves the function of an administrative proceeding where scattered individual interests are represented by the government. (*Hypertouch,* at p. 1548.) Requiring the class members to take an affirmative step, that is, a formal joinder or affirmatively voiced consent, as a condition of participating in the class, would create "an ersatz form of 'permissive joinder.' " (*Id.* at p. 1549.) *Hypertouch* noted that these problematic "spurious" class actions bedeviled the federal courts for several decades before adoption of the modern version of Rule 23.[8] (See *Haro, supra,* 174 Cal.App.4th at pp. 1075–1076.)

Further, under the California Rules of Court governing class actions, *Hypertouch* found the rules, while not specifically prohibiting an opt-in procedure, did not permit such a mechanism. (*Hypertouch, supra,* 128 Cal.App.4th at p. 1549.) *Hypertouch* noted that a class action was designed for matters where joinder of all parties was impracticable, and was meant to eliminate the need to join absent parties. "Because the members of a certified class are by definition ascertainable, those members who cannot be personally notified are entitled only to notice 'reasonably calculated' to apprise them of the action. California rule [3.766] cannot reasonably be construed to permitting the use of an 'opt-in' requirement as a means of providing the actual notice the rule was designed to make unnecessary." (*Ibid.*) Fundamentally, an opt-in requirement for participating in a class was fundamentally at odds with the nature of a class action, and was "offensive" to the reasonable notice provision of California Rules of Court, rule 3.766. (128 Cal.App.4th at p. 1548.)

*Hypertouch* further reasoned that the principal purpose of class notice was to protect the integrity of the class action process, one purpose of which was to prevent the burdening of courts with multiplicities of action. An opt-in procedure would have the effect of decreasing the number of class members bound by the judgment and increase the likelihood of redundant litigation. "The overwhelming weight of authority teaches that the 'opt-in' approach does not enhance but undermines the salutary effect of proper class actions. The ascertainability of the class must be determined in connection with

---

[8] Prior to 1966, Rule 23 defined opt-in class actions as " 'spurious' " class actions. (7B Wright et al., Federal Practice and Procedure (3d ed. 2005) § 1807, p. 473, fn. 10 and accompanying text.) The 1966 amendment to Rule 23 did away with opt-in classes. (7B Wright et al., Federal Practice and Procedure, *supra,* § 1807, p. 473, fn. 10.)

certification of the class, not as an aspect of determining the content of notice or the manner in which notice should be given." (*Hypertouch, supra*, 128 Cal.App.4th at p. 1550.)[9]

In *Haro, supra*, 174 Cal.App.4th 1067, the plaintiffs sought to certify an employee class under the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 216). The trial court denied the motion to certify the class under Code of Civil Procedure section 382, and *Haro* held that an FLSA action could not be maintained as a class action under section 382 because FLSA's provision required the class members to opt in to the proceedings.

*Haro* noted that section 216(b) of the FLSA permits representative actions, but limits membership in the class by providing, "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." (29 U.S.C. § 216(b).) This opt-in feature distinguishes FLSA actions from ordinary class actions brought under Rule 23. Pursuant to Rule 23, each person within the class description was considered to be a class member and bound by any judgment unless such person opted out of the proceedings. (*Haro, supra*, 174 Cal.App.4th at p. 1071.)

Based on the opt-in feature, *Haro* followed the reasoning of *Hypertouch* and concluded FLSA actions were not traditional "class actions" within the meaning of Rule 23 or Code of Civil Procedure section 382. (*Haro, supra*, 174 Cal.App.4th at p. 1077.) *Haro* additionally noted that "it is no small matter" that California Rules of Court, rule 3.766 governing notice to class members had no provision for an opt-in notice, and as *Hypertouch* found, section 382 itself did not provide a procedural framework for opt-in actions. (*Haro*, at pp. 1076–1077.) *Haro* concluded that as a matter of law an FLSA opt-in action could not be maintained as a class action under section 382. (*Haro*, at p. 1077; see also *Sharp v. Next Entertainment Inc.* (2008) 163 Cal.App.4th 410, 432 [78 Cal.Rptr.3d 37] ["opt-in procedures conflict with California's class action procedures and inevitably are methods that permit a class action defendant to chip away at the size of a class"].)

We recognize the benefits of a class action do not as readily accrue where members must affirmatively join the class. Here, the putative class

---

[9] The dissent in *Hypertouch* argued that opt-in class actions were not "as disreputable as the majority" suggested. (*Hypertouch, supra*, 128 Cal.App.4th at p. 1559 (conc. & dis. opn. of Haerle, J.).) First, the technique had been mentioned in *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420 [95 Cal.Rptr.2d 57] and employed, as noted in *Kern, supra*, 393 F.3d at pages 126–129, in nonstatutory federal cases; second, Rule 23 and California Rules of Court, rule 3.766 were "not even remotely similar" in wording. (*Hypertouch, supra*, 128 Cal.App.4th at p. 1559 (conc. & dis. opn. of Haerle, J.).)

members are those seeking free medical advice, and only approximately two-thirds of them responded to the Center's explanation of the error in medication and sought free retreatment. It is less likely that such members would affirmatively seek to join a class. Without the mandatory joinder effect of an opt-out class action, the Center will not obtain res judicata effect of a judgment; small individual class plaintiffs will not obtain the benefit of a settlement; and the cost of administering many small actions will not be avoided. Nonetheless, the Center points out that it has been more than six years since the error in medication, and if small class plaintiffs had wanted to come forward and file individual suits, they would have. This fact only underscores the point that the class plaintiffs in this action are likely of limited means and have limited access with which to pursue their claims judicially. A class action in which they automatically become participants benefits them.

We do recognize, however, that California Rules of Court, rule 3.760 permits the rules to be set aside in a special case. (Cal. Rules of Court, rule 3.760(b).) We see that in this case, arguments could be made in favor of an opt-in action based on the fact the class size is small (the approximately 650 persons receiving erroneous medication) and already known to the Center (it has a patient list of those persons). Thus, theoretically the class size might not be artificially small due to the use of the opt-in procedure because the Center knows exactly who the class members are. However, some such members may not come forward to request inclusion due to ignorance, fear, or lack of notice. Indeed, only two-thirds of improperly treated patients sought retreatment. Although such patients may have sought treatment elsewhere, that is not likely given that even the improperly administered medication did not result in any uncured cases of syphilis.

 Therefore, we hold that the trial court did not err by not applying the potential exception of California Rules of Court, rule 3.760(b) to this case to permit an exception to the application of the rules regarding notice. The Center argues an opt-in class is mandatory to protect the patients' physician-patient privilege and privacy rights because mere disclosure of their names will result in a violation of those rights. (*Rudnick v. Superior Court* (1974) 11 Cal.3d 924, 933–934, fn. 13 [114 Cal.Rptr. 603, 523 P.2d 643] ["[i]f . . . disclosure of the patient's name inevitably in the context of such disclosure reveals the confidential information, namely the ailments, then such disclosure violates the [physician-patient] privilege"].) We do not agree in this case because we do not see how sending a class notice in an opt-in action where the Center has control of the names to whom the notice is sent is superior to an opt-out action. In an opt-in case, all patients would be sent notice of the class action and be asked to participate. Notice would be sent by the Center to all of those persons treated, as it did previously with the informal letter it sent out advising the patients of the erroneous medication. Similarly, in an

opt-out case, all patients would be sent notice of the class action and be advised that unless they opted out, they would be bound by any judgment. In either case, a notice is sent to the patients *but no names are disclosed* to any third parties.

Therefore, the mere act of sending notice would not violate any privilege or privacy because the names would not be disclosed to third parties. However, to protect the patients' privilege and privacy rights, as discussed *post*, an administrator must control the notice to the putative class. (Cal. Rules of Court, rule 3.766(a) [court may order either party to provide notice].) Currently, the parties have agreed to prepare two lists of class members—one containing names and other identifying information, and one with numbers substituted for names. These lists, given that they contain information privileged under *Rudnick*, may only be disclosed to the administrator to ensure that service is proper.

B. *Protection of Privacy Rights and Privileged Communications.*

1. *Privacy Rights.*

■ The California Constitution "creates a zone of privacy which protects against unwarranted compelled disclosure of certain private information. [Citations.]" (*Planned Parenthood Golden Gate v. Superior Court, supra*, 83 Cal.App.4th at p. 357.)[10]

In *Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360 [53 Cal.Rptr.3d 513, 150 P.3d 198] (*Pioneer*), a purchaser of a defective DVD player manufactured by Pioneer brought a class action on behalf of himself and others who purchased the same model DVD player. In connection with discovery, Pioneer provided redacted information relating to 700 or 800 other customers who had complained about the DVD player, and the class plaintiff sought additional information on those persons, including their names and addresses. Pioneer refused to comply, citing the customers' right to privacy under the California Constitution. (Cal. Const., art. I, § 1.) (40 Cal.4th at p. 364.)

The trial court at first found the information protected unless the customers received a letter pursuant to *Colonial Life & Accident Ins. Co. v. Superior*

---

[10] The California Constitution provides, "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." (Cal. Const., art. I, § 1.) The phrase "and privacy" was added to the California Constitution by voter initiative (the Privacy Initiative). (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 15 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill*).)

*Court* (1982) 31 Cal.3d 785 [183 Cal.Rptr. 810, 647 P.2d 86].[11] The trial court in *Pioneer* concluded that in order for the *Colonial Life* letter to the Pioneer customers to have meaning, it should require an affirmative response permitting the information to be disclosed, and initially approved a letter in which no disclosure of information would be made unless the customers responded to the *Colonial Life* letter. However, the plaintiff moved for reconsideration, and Pioneer adopted a letter requiring the customers to respond only if they did not agree to disclosure. (*Pioneer, supra*, 40 Cal.4th at pp. 364–365.)

█ The California Supreme Court in *Pioneer* reasoned that the privacy right protects the "individual's reasonable expectation of privacy against a serious invasion." (*Pioneer, supra*, 40 Cal.4th at p. 370, italics omitted.) The *Pioneer* court relied on the analytic framework set forth in *Hill, supra*, 7 Cal.4th 1 for evaluating invasion of privacy claims. First, the claimant must possess a legally protected privacy interest. Second, the claimant must have a reasonable expectation of privacy under the circumstances, including the customs, practices, and physical settings surrounding the circumstances. Third, the invasion of privacy must be serious in nature, scope, and actual or potential impact. (*Hill*, at pp. 35–37.) If the invasion of privacy is serious, then the court must balance the privacy interest at stake against other competing interests, which include the interest of the requesting party, fairness to litigants in conducing the litigation, and the consequences of granting or restricting access to the information. (*Hill*, at p. 37; *Pioneer, supra*, 40 Cal.4th at pp. 370–371.) Constructing this balance requires a meticulous evaluation of the privacy right asserted, the degree of the imposition on that right, and the interests militating for and against any intrusion on privacy. (*Pioneer*, at p. 370.)

The California Supreme Court found no abuse of discretion in the trial court's ruling approving the letter requiring customers to opt out of having their information disclosed. First, *Pioneer* found that the complaining customers would not likely have expected their identifying information to be kept confidential unless they affirmatively consented to its release, and indeed would expect, "and even hope" that their names and addresses would be given to a class action plaintiff. (*Pioneer, supra*, 40 Cal.4th at p. 372.) Second, there was no serious invasion of privacy in the release of names and addresses after the customers had been given the opportunity to object. The information was not "particularly sensitive," and did not involve personal medical history, current medical condition, or details regarding financial

---

[11] In *Colonial Life*, the trial court permitted disclosure by an insurer of the names and addresses of previously insured claimants if such claimants authorized disclosure by signing and dating an enclosed form letter. (*Colonial Life & Accident Ins. Co. v. Superior Court, supra*, 31 Cal.3d at pp. 787–790; see *Pioneer, supra*, 40 Cal.4th at p. 364.)

information. Instead, the disclosure was limited to information that had already been voluntarily disclosed to Pioneer. *Pioneer* noted that contact information regarding the identity of potential class members is generally discoverable so that the lead plaintiff may learn of those persons who could assist in prosecuting the case. Furthermore, even though the opt-out letters might not be received or read, the proposed method of notice was sufficient because it was reasonable in the context. (*Id.* at pp. 372–373.)

Finally, in balancing the opposing interests, the trial court could reasonably have concluded that the plaintiff's interest in obtaining contact information regarding other complaining Pioneer customers outweighed the possibility that some of those customers might not receive the letter and fail to object. From the standpoint of fairness to litigants in a class action, Pioneer would have a significant advantage if it could retain for its own use the contact information of the complaining customers. If the plaintiff could obtain this information, he could level the playing field and increase his chances of prosecuting a successful class action. (*Pioneer, supra,* 40 Cal.4th at p. 374.) *Pioneer* observed in conclusion that employing opt-in mechanisms to protect privacy rights could have potentially adverse effects on socially significant actions, such as consumer rights cases; elder abuse; food and drug hazards; and consumer product, warranting, health and safety standards. (*Ibid.*)

Here, with regard to information covered by privacy rights, the trial court did not conduct the balancing necessary to determine whether the parties can compel discovery into private information of the class members. (*Lantz v. Superior Court* (1994) 28 Cal.App.4th 1839, 1857 [34 Cal.Rptr.2d 358].) Pursuant to *Hill,* whether a legally recognized privacy interest exists is a question of law; whether the circumstances give rise to a reasonable expectation of privacy and there is a serious invasion is a mixed question of law and fact. (*Hill, supra,* 7 Cal.4th at p. 40.)

The class members' medical records are private. (*John B. v. Superior Court* (2006) 38 Cal.4th 1177 [45 Cal.Rptr.3d 316, 137 P.3d 153].) These unnamed plaintiffs have a reasonable expectation in the privacy of their medical records at the Center given the extremely sensitive nature of the information contained in them (sexually transmitted disease, possible HIV status, and sexual orientation). Finally, the proposed invasion here, namely, disclosure to a wide array of third persons in connection with the litigation, is serious in nature, scope and potential impact. Thus, we must balance the competing interests at stake here—the benefits of efficient litigation where disclosure does not require the class members' consent and classwide recovery against the Center versus the class members' interest in controlling how this sensitive information is disseminated.

Therefore, we conclude that the trial court erred in ordering the disclosure of the names of the putative class plaintiffs to the named plaintiffs because such disclosure would violate their privacy rights.

### 2. *The Physician-patient Privilege.*

■ Under California's Evidence Code the physician-patient privileges grants a patient the right to decline to disclose, or prohibit a third party from disclosing, any "confidential communication" with a medical professional. (Evid. Code, § 994.) Evidence Code section 994 limits the right to claim the physician-patient privilege to the holder of the privilege (i.e., the patient); a person authorized to claim the privilege by the holder of the privilege; or the physician who received the confidential communication. The privilege serves two purposes: (1) to prevent humiliation that might follow disclosure of the patient's ailments, and (2) to encourage the patient's full disclosure to his or her physician. (*Binder v. Superior Court* (1987) 196 Cal.App.3d 893, 898 [242 Cal.Rptr. 231].)

■ The physician-patient privilege may only be waived through a clear manifestation of an intent to waive. (Evid. Code, § 912, subd. (a); *Palay v. Superior Court* (1993) 18 Cal.App.4th 919, 926, fn. 7 [22 Cal.Rptr.2d 839].) Waiver occurs if the person holding the privilege, without coercion, discloses a significant portion of the communication or has consented to disclosure. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure. (Evid. Code, § 912, subd. (a).) A person suing for personal injuries waives the physician-patient privilege. (Evid. Code, § 996.)

In *Pollock v. Superior Court* (2001) 93 Cal.App.4th 817 [113 Cal.Rptr.2d 453], the plaintiff in an insurance bad faith action on a disability policy sought discovery of all insureds who were receiving psychiatric disability benefits and who had been denied such benefits during a four-year period. (*Id.* at p. 819.) The insurer objected to providing the information on the grounds of privacy. The plaintiff agreed to stipulate that all information about the claimants would be subject to a protective order, and that contact with the claimants would be limited to a letter approved by the insurer. The letter asked for the insured's consent to the release of information. The plaintiff sought the insureds' names and addresses in order to send the letter, but the insurer objected and provided the medical opinion of a psychiatrist that due to the sensitive nature of the information, its release might cause further trauma to the patients because they would know their personal information had been revealed. (*Id.* at pp. 819–820.) *Pollock* held that the names and addresses of the claimants were not discoverable because the insured claimants did not waive their physician-patient privilege by submitting claims;

furthermore, the disclosure of their identities would simultaneously and necessarily disclose the nature of their conditions. (*Id.* at p. 821.)

 Here, the disclosure of the patient list simultaneously discloses the patient's medical condition, namely syphilis, and disclosure of such sensitive information necessarily requires an affirmative consent to waive the privilege. When a party puts in issue a matter that is normally privileged, the privilege may be waived, and a plaintiff waives the physician-patient privilege to the extent that physical condition is an issue in the suit. (Evid. Code, §§ 912, subd. (a),[12] 996.) However, in an opt-out class action, merely by passively consenting to membership in the class, a class member does not expressly place his or her medical condition at issue, therefore the exception of Evidence Code section 996[13] or Evidence Code section 912, subdivision (a) does not apply. Further, the named class plaintiffs do not hold the privilege on behalf of the unnamed class members under Evidence Code section 993. Section 993 allows a representative to assert the privilege on behalf of a patient when the patient is incapacitated or deceased and thus by its terms does not apply to class action representation. (See, e.g., *Rittenhouse v. Superior Court* (1991) 235 Cal.App.3d 1584, 1588 [1 Cal.Rptr.2d 595] [personal representative of deceased].)

### C. *Notice Must Be Given on an Opt-out Basis Through a Third Party Administrator.*

The Center's patient list consisting of those persons who were given the wrong medication and/or received retreatment shall not be disclosed to the named plaintiffs, their counsel, or any other persons, except it shall be disclosed to a court-appointed class administrator for the purpose of mailing the notice of the class action to all putative class members. To the extent putative class members opt out of the class, their names, other identifying information, and medical information shall not be subject to disclosure and shall remain sealed. With respect to those class members who do not opt out

---

[12] Evidence Code section 912, subdivision (a) provides that a person's right to claim a statutory privilege, including the physician-patient privilege, is "waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege."

[13] Evidence Code section 996 provides: "There is no privilege under this article as to a communication relevant to an issue concerning the condition of the patient if such issue has been tendered by: [¶] (a) The patient; [¶] (b) Any party claiming through or under the patient; [¶] (c) Any party claiming as a beneficiary of the patient through a contract to which the patient is or was a party; or [¶] (d) The plaintiff in an action brought under Section 376 or 377 of the Code of Civil Procedure for damages for the injury or death of the patient."

of the class action, no class member's name, identifying information, or medical information is to be disclosed without that class member's prior authorization. Further, the trial court is to take steps to ensure that the names, identifying information, and medical information of the class members are not subject to disclosure under any circumstances in any public proceeding or public filing.

## DISPOSITION

The Center's petition for writ of mandate is granted in part and denied in part. Let a peremptory writ issue directing the trial court to vacate that portion of its order requiring the Center to disclose to the class plaintiffs the names and other identifying information of the putative class members. In all other respects, the order is affirmed. The court shall issue a new order in accord with protection of privacy rights and privileged communications, as set forth in this opinion. Petitioner is to recover costs.

Mallano, P. J., and Chaney, J., concurred.