[No. F007643. Fifth Dist. Dec. 2, 1987.]

WILLIAM BINDER, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
HERBERT NEUFELD et al., Real Parties in Interest.

894

**COUNSEL**

Patterson, Ritner, Lockwood, Zanghi & Gartner, Horvitz, Levy & Amerian, George P. Schiavelli and Andrew N. Chang for Petitioner.

No appearance for Respondent.

Klein, Wegis & Duggan and John C. Hall for Real Parties in Interest.

## OPINION

**BEST, J.**—William Binder, M.D. (hereinafter defendant), defendant in an action for wrongful death based on medical neglecne, seeks relief from the lower court's order compelling production of "any and all . . . photographs" in defendant's possession "depicting a lesion suspected or diagnosed as melanoma."

## ██ fn. ██ FACTUAL AND PROCEDURAL HISTORY[1]

Real parties in interest (hereinafter plaintiffs) are the wife and two daughters of Herbert Neufeld. Defendant is a dermatologist specializing in the treatment of skin diseases. The decedent, Herbert Neufeld, consulted defendant on August 11, 1983, concerning a mole on Mr. Neufeld's left leg. Based upon a physical examination and defendant's overall clinical impressions, defendant diagnosed the lesion as "a possible compound nevus with a venous angioma" and recommended to Mr. Neufeld the lesion be removed for identification by a pathologist. However, Mr. Neufeld did not return to defendant's office for over nine months until May 15, 1984. At that time, the lesion was removed and sent to a pathologist who, with the aid of a microscope, diagnosed the lesion to be melanoma. Mr. Neufeld subsequently died. Plaintiffs allege defendant negligently failed to diagnose Mr. Neufeld's lesion as melanoma on August 11, 1983.

On December 9, 1985, plaintiffs served defendant with a request for production of, inter alia, any photographs in defendant's possession depicting a lesion suspected to be or diagnosed as melanoma.

Defendant objected on grounds that compliance with the request would violate the physician-patient privilege and that the request was overbroad

---

[1] Plaintiffs failed to file a written return as ordered by this court. California Rules of Court, rule 56(c) allows a real party in interest to make a return to a writ "by demurrer, verified answer or both." Here, plaintiffs have done none of these. There is no verified response to the allegations and facts set forth in the petition. They have filed only a document entitled "Opening Brief" with attached exhibits. This unverified document neither controverts the allegations in defendant's writ petition (*Chambers* v. *Superior Court* (1981) 121 Cal.App.3d 893, 896 [175 Cal.Rptr. 575]) nor puts in issue any "facts" alleged in their memorandum (*City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 922, fn. 11 [120 Cal.Rptr. 707, 534 P.2d 403]). Accordingly, the facts alleged in defendant's petition must be accepted as true and the "facts" alleged by plaintiffs must be ignored. (*Chambers* v. *Superior Court, supra,* at p. 896, fn. 2.)

and oppressive. Plaintiffs moved to compel defendant to respond to their request and, after hearing, the motion was granted on March 21, 1986. Defendant's motion for reconsideration was denied on July 15, 1986.

Defendant's customary practice is to have his nurses take Polaroid photographs of all patients' skin lesions. The photographs are for a general frame of reference only and are not intended to be diagnostic. Defendant has seen a total of over 25,000 patients. In order to comply with plaintiffs' request, defendant would have to review each of those patients' files since they are not indexed by diagnosis.

Defendant did turn over to plaintiffs numerous educational photographs which he has used for reference in treating his patients.

DISCUSSION

I.

*Are the photographs confidential communications within the meaning of Evidence Code section 992?*

■ Evidence Code section 992 defines a " 'confidential communication between patient and physician' " as follows: "As used in this article, 'confidential communication between patient and physician' means information, including information obtained by an examination of the patient, transmitted between a patient and his physician in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the physician is consulted, and includes a diagnosis made and the advice given by the physician in the course of that relationship."

The subject photographs were taken in conjunction with and as part of defendant's examination of his patients. It is undisputed they were taken strictly in the course of the physician-patient relationship. It is further undisputed that the physician and patient understood the photographs would be disclosed to no third persons other than persons present during the taking of the photographs and medical personnel to whom disclosure would be reasonably necessary for the patient's treatment. Defendant caused the subject photographs to be taken of his patients' lesions for the sole purpose of obtaining confidential and private information regarding the patients' condition to assist in rendering proper diagnosis and treatment. The photographs clearly constitute "confidential communications" within the express meaning of Evidence Code section 992. (See *Holm* v. *Superior*

*Court* (1954) 42 Cal.2d 500, 508 [267 P.2d 1025] [photographs of accident scene taken by defendant's agent held to be confidential communications within the attorney-client privilege], disapproved on other grounds in *Suezaki* v. *Superior Court* (1962) 58 Cal.2d 166 [23 Cal.Rptr. 368, 373 P.2d 432, 95 A.L.R.2d 1073].)

The next question is whether the compelled disclosure of the photographs, as required by the trial court's discovery order, would violate the physician-patient privilege.

■ The dual purposes of the patient-physician privilege were stated in *Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669, 678-679 [156 Cal.Rptr. 55] as follows: "The patient-physician privilege (Evid. Code, §§ 990-1007) creates a zone of privacy whose purposes are (1) 'to preclude humiliation of the patient that might follow disclosure of his ailments' [citations] and (2) to encourage the patient's full disclosure to the physician of all information necessary for effective diagnosis and treatment of the patient [citations].

"The patient should be able to rest assured with the knowledge that 'the law recognizes the communication as confidential and guards against the possibility of his feelings being shocked or his reputation tarnished by their subsequent disclosure.' [Citation.] The matters disclosed to the physician arise in most sensitive areas often difficult to reveal even to the doctor. Their unauthorized disclosure can provoke more than just simple humiliation in a fragile personality. The reasonable expectation that such personal matters will remain with the physician are no less in a patient-physician relationship than between the patient and psychotherapist. The individual's right to privacy encompasses not only the state of his mind, but also his viscera, detailed complaints of physical ills, and their emotional overtones. The state of a person's gastro-intestinal tract is as much entitled to privacy from unauthorized public or bureaucratic snooping as is that person's bank account, the contents of his library 'or his membership in the NAACP."

■ In this case, disclosure of the subject photographs would subvert both objectives of the physician-patient privilege. First, it would undoubtedly shock and humiliate present and former patients of defendant to learn that pictures of their bodies and ailments would be turned over to strangers. Furthermore, it is probable the patients' sensibilities would be offended whether or not their identities are disclosed together with the photographs. Relying upon *Rudnick* v. *Superior Court* (1974) 11 Cal.3d 924 [114 Cal.Rptr. 603, 523 P.2d 643], plaintiffs argue the subject photographs are nothing more than harmless descriptions of the patients' ailments and are not protected by the physician-patient privilege: "It is the ailments which [plaintiffs] seek[] to have disclosed, *not* the identity of the patient or means

by which the patient could be identified." In *Rudnick* the plaintiffs sought to discover written adverse reaction reports of various doctors whose patients had ingested a drug manufactured by the defendant. The court noted in dictum ". . . if the disclosure reveals the ailments but not the patient's identity, then such disclosure would appear not to violate the privilege." (*Id.* at pp. 933-934, fn. 13.) However, while that dictum may be correct under some circumstances, it is one thing to have a *description* of one's ailment read, but quite another to have that ailment actually *depicted* in a photograph. Thus, even if the dictum in *Rudnick* had been a part of the holding in that case, it is distinguishable from this case.

Furthermore, in *Rudnick* the Supreme Court did not address the second purpose underlying the physician-patient privilege, which is to encourage the patient's full disclosure of all information relevant to effective diagnosis and treatment of his or her condition. Many physicians, among others, oral surgeons, plastic surgeons, oncologists and orthodontists, as well as dermatologists, routinely take or have photographs taken of their patient's disease processes or other conditions in order to follow the progress of that process or condition or a particular course of treatment. In our view, a rule compelling disclosure of patient photographs would discourage patients from allowing physicians to photograph their ailments or other conditions.

We hold that compelling disclosure of the subject photographs in this case would violate the physician-patient privilege.

## II

*Would compelling disclosure of the photographs violate the patients' right to privacy?*

Dr. Binder contends that the disclosure of the photographs will not only violate the patient-physician privilege, but will also violate his patients' rights to privacy. The right of privacy is guaranteed by article I, section 1 of the California Constitution as an inalienable right. (*White* v. *Davis* (1975) 13 Cal.3d 757, 773 [120 Cal.Rptr. 94, 533 P.2d 222].) ■ Dr. Binder, as custodian of his patients' records, has the duty to assert the privacy rights of his patients in the contents of those records. (*Craig* v. *Municipal Court* (1979) 100 Cal.App.3d 69, 77 [161 Cal.Rptr. 19].)

The patient-physician privilege and the right of privacy are closely related protections against public disclosure of private information. The patient-physician privilege "creates a zone of privacy" (*Board of Medical Quality Assurance* v. *Gherardini, supra,* 93 Cal.App.3d at p. 678) and, therefore, the privacy interests of the patients whose photographs are sought by plaintiffs

was invoked by implication in Dr. Binder's assertion of the patient-physician privilege.

Even though the inalienable right of privacy guaranteed by the California Constitution is a fundamental interest of our society, other state interests such as facilitating the ascertainment of truth pertaining to legal proceedings compete with this right. (*Board of Trustees* v. *Superior Court* (1981) 119 Cal.App.3d 516, 524-525 [174 Cal.Rptr. 160].) As noted in the *Board of Trustees* case, *supra,* "The constitutional right of privacy is 'not absolute'; it may be abridged when, but only when, there is a 'compelling' and opposing state interest." (*Id.,* at p. 525.) The following guidelines assist in determining when disclosure of private information may be compelled: "In an effort to reconcile these sometimes competing public values, it has been adjudged that inquiry into one's private affairs will *not* be constitutionally justified simply because inadmissible, and irrelevant, matter sought to be discovered *might* lead to other, and relevant, evidence. [Citation.] ' "When compelled disclosure intrudes on constitutionally protected areas, it cannot be justified solely on the ground that it may lead to relevant information." ' [Citations.]

"And even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.' [Citations.]

"Other apposite authority on the subject follows. Since 'judicial discovery orders [relating to *private* matters] inevitably involve *state-compelled* disclosure of presumptively protected information, the principles [of art. I, § 1] have equal application to purely private litigation.' [Citation.] 'The custodian [of private information] has the right, in fact the duty, to resist attempts at unauthorized disclosure and the person who is the subject of [it] is entitled to expect that his right will be thus asserted.' [Citation.] And, of course, the custodian of such private information may not waive the privacy rights of persons who are constitutionally guaranteed their protection.

"Even where the balance, because of a ' "compelling state purpose," ' weighs in favor of disclosure of private information, the scope of such disclosure will be narrowly circumscribed; such an invasion of the right of privacy ' "must be drawn with narrow specificity." ' [Citation.] And: 'Where it is possible to do so, " . . . the courts should impose partial limitations rather than outright denial of discovery." ' [Citation.]" (*Id.* at pp. 525-526.) In balancing the respective interests, it is also the rule that "if state scrutiny is to be allowed, it must be by the least intrusive manner."

(*Board of Medical Quality Assurance* v. *Gherardini, supra,* 93 Cal.App.3d 669, 680.)

█ Since medical records are the type of information which is protected by the right of privacy, the first question is whether the private information sought to be discovered is directly relevant to the issues of the instant litigation. (*Board of Trustees* v. *Superior Court, supra,* 119 Cal.App.3d at p. 525.) It is not enough the information may lead to relevant evidence. (*Ibid.*) Plaintiffs' argument for relevance is limited to a single contention: "[P]laintiffs are entitled to all information available to Dr. Binder, both prior to and subsequent to the visit by Herbert Neufeld, which would go to his knowledge concerning the condition of melanoma. Clearly, prior photographs . . . would be demonstrative of Dr. Binder's data base in diagnosis of melanoma . . . ."

Defendant contends plaintiffs' argument is fatally flawed for the simple reason that while Dr. Binder's knowledge of melanoma is relevant, photographs of his former patients are clearly not relevant. Defendant's contention has merit since it is undisputed that the photographs by themselves merely depict the patients' condition in very superficial terms and are not used in diagnosis. Thus, in order for the photographs to become relevant, plaintiffs would necessarily have to probe the patients' history of treatment to determine whether a particular lesion depicted was or was not, in fact, a melanoma. Plaintiffs have not shown that the subject photographs are directly relevant to any issue in this case.

### DISPOSITION

Let a peremptory writ of mandate issue commanding respondent court to vacate that part of its order dated March 21, 1986, requiring defendant to produce any and all slides and/or photographs depicting lesions on the bodies of defendant's patients.

Hamlin, Acting P. J., and Ivey, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.