Filed 2/27/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JASON C. SNIBBE,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>　　　　　Respondent;<br><br>BRUCE GILBERT et al.,<br><br>　　　　　Real Parties in Interest. | B252210<br><br>(Los Angeles County<br>Super. Ct. No. BC481372) |

ORIGINAL PROCEEDINGS in mandate.  Ernest M. Hiroshige, Judge.  Petition granted in part and denied in part.

Cole Pedroza, Kenneth R. Pedroza and Matthew S. Levinson; Law Brandmeyer & Packer, Robert B. Packer and Corey E. Krueger for Petitioner.

No appearance for Respondent.

Law Offices of Harold J. Light and Harold J. Light for Real Parties in Interest.

_____

Jason C. Snibbe, an orthopedic surgeon, has petitioned for a writ of mandate to compel the trial court to vacate a discovery order that required petitioner to produce 160 postoperative orders in a wrongful death case. Petitioner contends the orders are irrelevant to the litigation, the physician-patient privilege and patient privacy rights preclude their discovery, and the discovery order is unduly burdensome. We grant the petition in part, limiting discovery to the pain management provisions of the orders, including the type of surgery, date and signature fields, and directing that all other information be redacted. We deny the petition in all other respects.

**FACTUAL AND PROCEDURAL SUMMARY**

Mildred Gilbert passed away in January 2011 after a hip replacement surgery petitioner performed on her at Cedars Sinai Medical Center (Cedars). Mrs. Gilbert's sons, real parties in interest Bruce Gilbert and Scott Gilbert, sued Cedars,[1] petitioner, and the anesthesiologist for their mother's wrongful death.

The postoperative order in Mrs. Gilbert's case included, among other directions for her care, a provision for the administration of morphine, Dilaudid (hydromorphone), or other pain medication to be filled in by the physician. The form order left blank spaces for the doses and intervals at which the chosen medication was to be administered for mild, moderate, and severe pain. Handwritten notations provided for the administration of a maximum dose of two milligrams of hydromorphone every two hours for severe pain. Mrs. Gilbert was found unresponsive several hours after a nurse administered a two milligram dose by IV push.

Hydromorphone is a schedule II controlled substance. (Health & Saf. Code, § 11055, subd. (b)(1)(J).) In a declaration, an expert for real parties stated that hydromorphone presents a high risk of fatal respiratory depression. The expert opined

---

[1] Cedars has been dismissed from the lawsuit.

2

that the order of a maximum of two milligrams of hydromorphone for postoperative pain relief was below the standard of care and a substantial factor in Mrs. Gilbert's death.[2]

At his deposition, petitioner testified that the postoperative order was filled out and signed by his physician assistant Jennifer Cabrera.[3] Petitioner testified that it is his "standard of practice" to have Ms. Cabrera prepare all postoperative orders, which he "dictates[s] to her." He claimed that the two of them discuss pain relief with an anesthesiologist and refer some cases to a pain management service. He also claimed they decided together what pain relief to order for Mrs. Gilbert based on such factors as her age and the bone fracture she suffered during surgery.

In another part of the deposition cited by real parties' expert, petitioner testified he did not remember whether he consulted with the anesthesiologist about the maximum dose of hydromorphone to be administered in Mrs. Gilbert's case. The expert also cited the anesthesiologist's deposition testimony that he would not have recommended the two milligram maximum had petitioner dictated the drug order to Ms. Cabrera in the anesthesiologist's presence. The expert opined that making postoperative orders after a

---

[2] The expert also opined that ordering Mrs. Gilbert to an unmonitored bed on the orthopedic floor after the surgery was below the standard of care, given her condition and surgical complications. The expert cited to evidence that Mrs. Gilbert was 82 years old, had been bedridden, and had heart problems, elevated potassium levels, and anemia. Mrs. Gilbert's hip replacement surgery was complicated by an interoperative femur fracture that required placing her under general anesthesia and caused substantial blood loss.

[3] Business and Professions Code section 3502.1 allows a physician to delegate the issuance of drug orders to a physician assistant according to specified written protocols, and in issuing such orders the assistant acts as the physician's agent. (*Id*., subd. (a)(2).) A physician assistant authorized to issue drug orders must register with the United States Drug Enforcement Administration (DEA) and must complete a course in order to issue drug orders for schedules II through V controlled substances without a physician's advance approval. (*Id*., subds. (c)(2) & (f).) When a physician assistant issues a schedule II drug order, the supervising physician must review, countersign, and date the patient record within seven days. (*Id*., subd. (e).) While petitioner offers evidence on appeal that Ms. Cabrera is registered with the DEA, the record is unclear whether the other requirements of section 3502.1 were met in this case.

major surgery was not included in the delegation of services agreement between petitioner and Ms. Cabrera, and even if it were, a physician assistant would be "totally unqualified to make the medical decisions" regarding Mrs. Gilbert's postoperative care.

In requests for production nos. 23 and 24, real parties sought to discover all postoperative orders signed by petitioner between June 2010 and June 2011 and by Ms. Cabrera between June 2009 and June 2011, which provided for the administration of opioids, including hydromorphone. The requests allowed for the redaction of patients' names and personal identifying information. Petitioner objected to these requests as overbroad, irrelevant, and violative of third party privacy rights. Real parties moved to compel production. After allowing additional briefing and argument, the court granted the motion to compel, but limited the scope of discovery to 160 postoperative orders including provisions for the administration of opioids, split equally between surgeries petitioner performed at Cedars before and after Mrs. Gilbert's surgery. Upon seeking clarification, petitioner was given 15 days to produce the entire postoperative orders, not limited to their pain management provisions.

On petitioner's request, we issued an alternative writ directing the trial court to vacate its order granting the motion to compel as to requests for production nos. 23 and 24 and to deny the motion as to those requests, or show cause for not doing so. We also stayed the discovery order.

## DISCUSSION

Petitioner argues the discovery order violates the physician-patient privilege and third party privacy rights, seeks production of irrelevant evidence, and is unduly burdensome. We generally review discovery orders for abuse of discretion, but we independently review issues of law, such as those involving statutory interpretation. (*Pomona Valley Hospital Medical Center v. Superior Court* (2012) 209 Cal.App.4th 687, 692–693.)

4

# I

We begin with relevance. "Unless otherwise limited by order of the court . . . any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Pro., § 2017.010.) In the trial court, the parties disagreed whether the entire postoperative orders or only the provisions for the administration of opioids were subject to the discovery order. In response to petitioner's request for clarification, real parties argued in a conclusory fashion that other provisions in the orders, such as whether a patient is ordered returned to the orthopedic floor or how often vital signs are to be checked, are highly relevant to the litigation. The trial court apparently agreed since it directed petitioner to produce the entire postoperative orders, even though real parties' separate statement supporting the motion to compel and the court's findings on the motion were limited only to the relevance of provisions for the administration of opioids.

In their return, real parties argue that discovery of other patients' postoperative orders is relevant to "whether the Dilaudid Order arose from Dr. Snibbe's practice of always dictating to Ms. Cabrera as she makes the postoperative orders with the two of them discussing the case with the anesthesiologist; or instead the Dilaudid Order was made because Dr. Snibbe regularly permitted Ms. Cabrera to rely on boilerplate drug orders for the administration of opioid pain medication." Real parties do not argue that all provisions in petitioner's postoperative orders are "boilerplate." Nor do they explain the independent relevance of provisions for other patients' return to the orthopedic unit and vital signs checks. Significantly, the trial court denied real parties' separate requests to discover all postoperative orders, finding no evidence that orders not involving provisions for "opioid pain medications would be relevant to the issues in this case," and concluding that the discovery of such orders "would essentially constitute a fishing expedition" and infringe on third-party privacy rights without a compelling need.

As it stands, the discovery order is too broad. Based on real parties' limited showing and the trial court's finding of relevance only as to the opioid provisions of

5

postoperative orders, allowing discovery of the orders in their entirety is unreasonable.  It is all the more so because production of entire orders may raise legitimate concerns about the scope of intrusion into patient privacy rights, which we discuss later in this opinion.  But we do not agree with petitioner's argument that the opioid provisions in postoperative orders are irrelevant as well.

Petitioner relies on *Bowen v. Ryan* (2008) 163 Cal.App.4th 916 (*Bowen*) to argue that his treatment of other patients is irrelevant to whether his treatment of Mrs. Gilbert fell below the standard of care and that real parties essentially seek to discover inadmissible character evidence.  In *Bowen*, *supra*, 163 Cal.App.4th 916, a dentist was sued for choking and shoving a difficult child against a wall during an appointment.  At trial, evidence was introduced of nine other incidents of alleged mistreatment of difficult children by the defendant during appointments.  (*Id*. at p. 918.)  The Court of Appeal rejected the plaintiff's argument that evidence of the unrelated incidents was admissible to demonstrate that defendant acted in accordance with his usual custom or habit.  The court explained that "[c]ustom or habit involves a consistent, semi-automatic response to a repeated situation.  [Citations.]"  The court concluded that the defendant's mistreatment of "nine of some 45,000 patients," in different ways and under different circumstances, did not qualify as custom or habit; it was, rather, improper character evidence.  (*Id*. at p. 926.)

*Bowen* is distinguishable because, here, petitioner himself placed at issue his custom and practice of preparing post-operative orders.  "Any otherwise admissible evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with the habit or custom."  (Evid. Code, § 1105.)  Specifically, such evidence can be used to show "it was unlikely that a defendant was negligent on a particular occasion."  (*Dincau v. Tamayose* (1982) 131 Cal.App.3d 780, 793–795 [evidence of habitual response of doctor and staff to telephone calls about children's ailments admissible to show due care in case of alleged delay in diagnosing infant with spinal meningitis].)  Petitioner's deposition testimony that it is his custom and practice to dictate post-operative orders to his physician assistant can be used to show it was unlikely

6

Ms. Cabrera filled out Mrs. Gilbert's postoperative order on her own, without any input from petitioner.

Real parties, in turn, seek to rebut petitioner's testimony with evidence showing that petitioner routinely allowed Ms. Cabrera to fill out postoperative orders with "boilerplate" provisions for the administration of opioids. Such evidence of custom and practice is not improper character evidence even though it might also reflect poorly on petitioner's character. (Cf. *Marshall v. Brown* (1983) 141 Cal.App.3d 408, 416 [evidence of defendants' policy of giving employees bad recommendations admissible to prove conduct on particular occasion].) Petitioner is incorrect that real parties would need to prove the other patients' cases are medically similar to Mrs. Gilbert's, which would require a review of each patient's entire medical file. The only similarity needed to show petitioner's custom and practice would be in the substance of the pain management provisions in the postoperative orders. If all or substantially all postoperative orders include substantially similar provisions for opioids, the orders would tend to show that those provisions were indeed "boilerplate," rather than patient specific.[4]

We next consider whether the limited production of the pain management provisions of otherwise redacted postoperative orders violates the physician-patient privilege or the patients' right to privacy.

## II

The physician-patient privilege protects from disclosure confidential communications between a patient and his or her physician. (Evid. Code, § 994.) Its dual purpose is to protect the patient from the humiliation that might follow the disclosure of his or her ailment and to encourage full disclosure to the physician of information necessary for diagnosis and treatment. (*Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669, 678–679.)

---

[4] Our decision does not preclude real parties from requesting additional discovery if the pain management provisions of postoperative orders turn out to be "boilerplate," and real parties show the relevance of such other provisions as the return of patients to the orthopedic floor and standard vital signs checks to petitioner's custom and practice of preparing postoperative orders.

We do not agree with real parties' argument that petitioner waived the physician-patient privilege by failing to raise it in opposition to the request for production. While a physician may claim the physician-patient privilege, only the holder of the privilege may waive it, and the physician is not its holder. (See Evid. Code, §§ 912, 993, 994; cf. *Mavroudis v. Superior Court* (1980) 102 Cal.App.3d 594, 602–603 [psychotherapist not holder of psychotherapist-patient privilege].) Besides, petitioner's objection on privacy grounds was sufficient since the physician-patient privilege and the constitutional right of privacy in medical records are "closely related protections against public disclosure of private information." (*Binder v. Superior Court* (1987) 196 Cal.App.3d 893, 899 (*Binder*).)

Real parties interpret the physician-patient privilege as excluding physician orders. This narrow interpretation is contrary to the plain language of Evidence Code section 992, which defines "confidential communication" to include not only information disclosed by the patient but also "a diagnosis made and the advice given by the physician." (See *Carlton v. Superior Court* (1968) 261 Cal.App.2d 282, 288–289 [physician orders within scope of privilege].)[5]

But the physician-patient privilege will not be violated by the limited production of redacted postoperative orders in this case. In *Rudnick v. Superior Court* (1974) 11 Cal.3d 924 (*Rudnick*), which involved a request for production of adverse drug reaction reports, the Supreme Court explained for the guidance of the trial court that "if the disclosure reveals the ailments but not the patient's identity, then such disclosure

---

[5] At oral argument, real parties argued for the first time that physician assistant orders do not fall within the physician-patient privilege, citing *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 736 (holding physician-patient privilege does not apply to nurses or other medical staff working under physician's supervision or acting as physician's agent). We consider this argument forfeited because real parties could have presented it in their return but did not do so. (See *Yee v. Cheung* (2013) 220 Cal.App.4th 184, 197, fn. 9.) Moreover, in light of petitioner's testimony that his practice is to dictate postoperative orders to his physician assistant, it is at least arguable that orders signed by Ms. Cabrera may be treated as physician orders for purposes of the physician-patient privilege.

would appear not to violate the privilege." (*Id.* at p. 933–934, fn. 13.) Petitioner relies on *Binder*, *supra*, 196 Cal.App.3d 893, where the court declined to apply what it considered to be a dictum in *Rudnick*, *supra*, 11 Cal.3d 924 to photographs of patients' skin lesions. The court in *Binder* acknowledged that the dictum in *Rudnick* "may be correct under some circumstances." It distinguished the reports in *Rudnick* from photographs because "it is one thing to have a *description* of one's ailment read, but quite another to have that ailment actually *depicted* in a photograph." (*Binder*, at p. 899.) The *Binder* court was particularly concerned that the disclosure of patient photographs "would discourage patients from allowing physicians to photograph their ailments or other conditions." (*Ibid.*)

The postoperative orders at issue in this case do not implicate the concerns in *Binder*, *supra*, 196 Cal.App.3d 893 because there is no indication they contain photographs. If Mrs. Gilbert's order is any indication, postoperative orders are multi-page form orders that provide standard options for patient postoperative care, including pain management options, to be checked off or filled in as needed. In the top left corner of each page, Mrs. Gilbert's order identifies "total hip replacement" as the type of surgery performed at Cedars' Department of Surgery. Her personal identifying information is stamped in the upper right hand corner of the page. At the bottom, every page contains a signature-and-date block. The pain management section appears on page two of the order. It includes the names of the pain medications ordered, their doses, frequency and means of administration. This section makes no reference to Mrs. Gilbert's medical history. The page on which it appears can be easily redacted by whiting out the patient identifying information and orders unrelated to pain management. Petitioner has not shown that any other format is used in postoperative orders subject to discovery.

Petitioner appears to argue that the physician-patient privilege is absolute and applies even if the patient is "deidentified." The non-California cases the parties cite indicate a split of authority on the issue. Several courts have expressly approved the dictum in *Rudnick*, *supra*, 11 Cal.3d 924 that disclosure of the ailment without a disclosure of the patient's identity does not violate the physician-patient privilege. (See

9

*Terre Haute Regional Hosp., Inc. v. Trueblood* (Ind. 1992) 600 N.E.2d 1358, 1360; *Ziegler v. Superior Court in and for Pima County* (Ariz. 1982) 656 P.2d 1251, 1255; *Community Hospital Ass'n v. District Court In and For Boulder County* (Colo. 1977) 570 P.2d 243, 245.)  Other courts have applied the physician-patient privilege out of concern that the patient's identity may be recognized from information about the patient's health history included in the medical records.  (See e.g. *People ex rel. Dept. of Professional Regulation v. Manos* (Ill. 2002) 782 N.E.2d 237, 246, quoting *Parkson v. Central DuPage Hospital* (Ill. 1982) 435 N.E.2d 140, 144 [history of patients' prior and present medical conditions included in "admit and discharge summaries" made possibility of patient recognition very high].)  Here, real parties do not request production of the patients' entire medical records, and the possibility of patient recognition from the disclosure of deidentified postoperative orders is remote, especially when limited to the pain management provisions of such orders pursuant to our decision here.

Additionally, while some states generally prohibit disclosure of patient records even after redaction of personal information (see e.g. *Roe v. Planned Parenthood Southwest Ohio Region* (Ohio 2009) 912 N.E.2d 61, 71; *In re Columbia Valley Regional Medical Center* (Tex.App. 2001) 41 S.W.3d 797, 802), others recognize that whether redaction is sufficient depends on the circumstances of each case.  (See *Staley v. Northern Utah Healthcare Corp. dba St. Mark's Hospital* (Utah 2010) 230 P.3d 1007, 1012.)  Neither *Rudnick*, *supra*, 11 Cal.3d 924, nor *Binder*, *supra*, 196 Cal.App.3d 893 suggests that a blanket prohibition against disclosure of redacted patient medical records exists or should exist in California.  The physician-patient privilege does not prevent the disclosure of portions of redacted postoperative orders in this case.

### III

The right to privacy protects the "individual's reasonable expectation of privacy against a serious invasion."  (*Los Angeles Gay & Lesbian Center v. Superior Court* (2011) 194 Cal.App.4th 288, 307 (*Los Angeles Gay & Lesbian Center*), quoting *Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360, 370.)  "If the invasion of privacy is serious, then the court must balance the privacy interest at stake against

10

other competing interests, which include the interest of the requesting party, fairness to litigants in conducting the litigation, and the consequences of granting or restricting access to the information." (*Ibid*.)

Petitioner argues the trial court failed to balance third-party privacy rights against real parties' need for discovery. The court denied real parties' request for production of all postoperative orders "regardless of whether they involved administration of opioids" because it "could infringe the privacy rights of third parties without compelling need." But it found good cause for the limited production of postoperative orders providing for the administration of opioids in other patients' cases because those orders could show petitioner allowed Ms. Cabrera to issue "boilerplate" opioid orders. The court's findings indicate the court balanced real parties' need for discovery of opioid orders against non-parties' privacy right in their medical records.

To require balancing at all, an intrusion into privacy rights must be "serious in nature, scope, and actual or potential impact. [Citation.]" (*Los Angeles Gay & Lesbian Center*, *supra*, 194 Cal.App.4th at p. 307.) But patients' privacy rights are not infringed if "neither disclosure of the patients' identities nor disclosure of identifying medical information was requested." (*Board of Medical Quality Assurance v. Hazel Hawkins Memorial Hospital* (1982) 135 Cal.App.3d 561, 565 [request for unnamed charts of four patients did not infringe on patients' privacy rights]; see also *Kizer v. Sulnick* (1988) 202 Cal.App.3d 431, 439 [privacy rights require no more than deletion of named medical records in health study or "if feasible, the deletion of information which individually identifies the participants"].) The limited production of redacted postoperative orders cannot be said to infringe on patients' privacy rights any more than the production of unnamed patients' charts.

Most recently, in *Sander v. State Bar of California* (2013) 58 Cal.4th 300, 326, our Supreme Court declined to hold "as a matter of law that bar applicants' constitutional rights of privacy preclude disclosure" of information included in the State Bar admissions database (such as the applicant's race, ethnicity, law school, bar exam results, and grade point averages) "even in a deidentified form." The court did not reach the factual dispute

11

whether it is possible to successfully deidentify information obtained from government databases.

Petitioner argues generally that patients have substantial privacy interests in their medical records, but does not explain how any patient can be identified from the limited information included in the redacted postoperative orders at issue in these proceedings. The suggestion that redacted orders would disclose the patients' age, gender, weight and other personal information is unsupported because none of this information appears in the body of Mrs. Gilbert's postoperative order and the stamp bearing personal identifying information will be redacted.

The additional suggestion that improving reidentification techniques would pose actual danger to personal health information is speculative. It is based on the successful reidentification experiment a data specialist performed on an anonymized cancer patient database, which the Illinois Supreme Court rejected as definite proof of actual danger of re-identification. (*Southern Illinoisan v. Illinois Department of Public Health* (Ill. 2006) 844 N.E.2d 1; see generally Yakowitz, *Tragedy of The Data Commons* (2011) 25 Harv. J.L. & Tech. 1, 41 [arguing that hypothetical danger of reidentification is no greater than other information-based risks, such as hacking].)

Petitioner has made no showing that the postoperative orders in this case cannot successfully be redacted. To the extent he argues that disclosure of redacted orders nevertheless violates the patients' privacy rights as a matter of law, that is not the law in California. Moreover, to the extent the redacted orders would reveal information about the patients' health and ailments, such as the type of surgery performed or type and dosage of pain medication ordered, there is no indication that they would reveal particularly sensitive or embarrassing information comparable to the photographs of possibly cancerous skin lesions at issue in *Binder*, *supra*, 196 Cal.App.3d 893, 899, or the information about "sexually transmitted disease, possible HIV status, and sexual orientation" at issue in *Los Angeles Gay & Lesbian Center, supra,* 194 Cal.App.4th at page 308. Petitioner's deposition testimony indicates that he tends not to make orders for pain medication for patients taking heavy doses of opioids, preferring to refer such

12

patients to a pain management service. If so, the postoperative orders subject to discovery in this case appear less likely to include significant information about patients with any drug dependency.

Private information may be discoverable if directly relevant to the litigation. (*Binder*, *supra*, 196 Cal.App.3d at p. 900.) Generally, the least intrusive means must be utilized when privacy rights are at stake. (*Lantz v. Superior Court* (1994) 28 Cal.App.4th 1839, 1855.) A compelling need for private information does not exist if the information can be obtained through nonconfidential sources. (*Harding Lawson Associates v. Superior Court* (1992) 10 Cal.App.4th 7, 10.) However, absent a showing of a serious intrusion into patient privacy, there is no need to balance privacy interests against the need for discovery. (*Los Angeles Gay & Lesbian Center*, *supra*, 194 Cal.App.4th at p. 307.) Because the production of portions of redacted orders would not invade patient privacy, real parties need not show a compelling need for discovery. We nevertheless agree with their contention that the opioid orders are directly relevant and may provide information not realistically obtainable from other sources.

Petitioner suggests that deposing real parties' expert would show he can render an opinion without reference to orders in other patients' cases. In his declaration, the expert already has rendered an opinion that the opioid order in Mrs. Gilbert's case fell below the standard of care whether it was prepared by petitioner or Ms. Cabrera, for whose acts petitioner is responsible. The reason real parties seek to discover other patients' orders is not that the expert could not render an opinion on the standard of care without them, but that petitioner has not conceded he breached that standard. In his deposition, petitioner testified he and Ms. Cabrera together decided what postoperative relief to order for Mrs. Gilbert based on various factors specific to her case, suggesting that petitioner exercised his medical judgment. Real parties' theory is that Ms. Cabrera filled the postoperative order without any input from petitioner and without consideration of Mrs. Gilbert's condition. They admittedly have not deposed Ms. Cabrera because they do not expect she would be willing to confirm their theory and thus jeopardize her physician assistant license. But if postoperative orders in all or substantially all other patient cases include

substantially similar opioid provisions as the order in this case, that would weigh against finding that petitioner exercised medical judgment or supervision over Ms. Cabrera, thus providing additional support for the expert's opinion and strengthening real parties' case.

Petitioner insists that notice should be given to the patients whose records would be disclosed and that real parties circumvented the notice and opportunity to object under provisions of Code of Civil Procedure section 1985.3.  That statute requires a party utilizing a subpoena duces tecum to obtain a consumer's hospital records to give notice to the consumer.  (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1272–1273, fn. 7, citing Code Civ. Pro., § 1985.3, subds. (b)(1) & (2).)  Petitioner offers no argument or authority that a subpoena was required in this case, and in any event the notice provisions do not apply when a custodian of records is required to delete "all information which would in any way identify any consumer whose records are to be produced."  (Code Civ. Pro., §1985.3, subd. (i).)

IV

Petitioner argues that, even as limited to production of 160 postoperative orders, the discovery order still is unduly burdensome because he needs to expend valuable time identifying, reviewing, and redacting those orders.  According to real parties, the undue burden argument was untimely because petitioner raised it in his supplemental papers. But the trial court agreed with petitioner that reviewing over 900 charts and 600 surgeries would pose an undue burden, and limited the number of discoverable orders to alleviate that burden.  Under the abuse of discretion standard, we cannot say that the limited discovery order is unreasonable.  (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881–882.)

Petitioner's deposition testimony indicates he has access to his patients' records at Cedars through the Internet.  Nevertheless, he insists that he cannot access patient records within the custody and control of Cedars except for legitimate medical reasons and that he may be subject to penalties under the state Confidentiality of Medical Information Act (CMIA) (Civ. Code, § 56 et seq.) and the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 U.S.C. § 1320 et seq.) if he accesses records to

14

comply with the discovery order in this case. As real parties point out, producing redacted postoperative orders in response to the trial court's discovery order violates neither CMIA nor HIPAA, both of which allow disclosure of medical information pursuant to a court order without patient authorization. (See Civ. Code, §§ 56.05, subd. (j) [CMIA protects individually identifiable medical information], 56.10, subds. (a) & (b)(1) [disclosure compelled by court order permitted]; 45 C.F.R. § 164.512(e)(1)(i) [disclosure authorized by court order permitted].) In light of these provisions, petitioner's concerns appear to be unjustified.

## DISPOSITION

The petition for writ of mandate is granted in part and denied in part. Let a peremptory writ of mandate issue directing the trial court to set aside its order of August 20, 2013, as clarified on October 24, 2013, which granted real parties' requests for production nos. 23 and 24 and required production of 160 postoperative orders in their entirety. The trial court is directed to issue a new order, requiring production of the pain management provisions of the 160 postoperative orders. Patients' personal identifying information must be redacted, so that the redacted orders include only information about the type of surgery, the medication ordered, and the dates and signatures on the order. In all other respects the petition is denied.

The parties are to bear their own costs.

**CERTIFIED FOR PUBLICATION**


EPSTEIN, P. J.

We concur:



WILLHITE, J.                    MANELLA, J.


15