Filed 4/11/16  Maravilla v. Los Angeles Dodgers CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| FERNANDO MARAVILLA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LOS ANGELES DODGERS LLC,<br><br>    Defendant and Respondent. | B263602<br><br>(Los Angeles County<br>Super. Ct. No. BC507879) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael J. Raphael, Judge.  Affirmed.

Law Offices of Mifflin & Associates, Ken Mifflin for Plaintiff and Appellant.

Jerome M. Jackson for Defendant and Respondent.

_____

A patron suffered personal injuries when he slipped and fell at Dodger Stadium. The unrefuted evidence shows that the Dodgers lacked actual or constructive knowledge of a dangerous condition. We affirm the judgment in favor of the Dodgers.

## FACTS

On September 3, 2008, Fernando Maravilla fell in an aisle during a game at Dodger Stadium. He filed this action on May 3, 2013. The Dodgers moved for summary judgment, noting inconsistencies in Maravilla's story about what occurred, with respect to where he was seated and where he was walking (or standing) when he fell.

Maravilla testified that there was a clear peanut bag containing shells, an ice cream cup and a bottle of water "in plain view" and "easy to see" on the stairs. He agreed that "nothing was hiding it" and "anyone could have seen it." Maravilla opined that the foodstuff was there "a long time" because he arrived at the game during the seventh inning. He agreed, however, that he did not actually know how long the food was laying on the ground. He did not see himself step on a bag containing food items, and no one told him that he did so; rather, he looked up after his fall and saw the items there.

Lon Rosenberg, the Dodgers' vice-president of operations in 2008, was responsible for stadium maintenance. He declared that the stadium is swept and hosed down after each game to remove all debris and foreign matter. Rosenberg and his staff conduct a "walk through" to assure that all seating areas, aisles and walkways are clean, safe and free from hazards. Ushers reinspect the areas under their supervision before the gates open. Once the gates open, "four separate groups of employees were charged with inspecting the premises constantly": (1) ushers; (2) security officers; (3) off-duty law enforcement officers; and (4) a team of maids and porters. These individuals walk down the aisles during the game, looking for spills or substances that would create a hazardous condition. If a hazard is observed, the maids or porters immediately remove and clean up any spill. Rosenberg had "no recollection of any report of foodstuffs, foreign matter, or liquids being spilled" in the area where Maravilla had seats on the evening of September 3, 2008, and no reason to believe that there was a spill there.

2

Maravilla responded, "As I was standing near the row of seat[s] where my party was to be seated, I allowed all of them to go ahead of me to be seated, because I wanted to sit on the aisle. As I stepped back to allow them to enter the row of seats, I tripped and fell. There was spilled melted ice cream on the floor, peanut shells, broken plastic bags and soda spilled on the floor with an empty can next to the debris, which created a risk of a slip and caused me to fall. The melted ice cream and the broken peanut shells gave me an impression that it had been walked on since the gates opened at 5:00 p.m. It was not until after I fell that I first saw the debris which caused me to slip and fall."

Maravilla objected that Lon Rosenberg's declaration lacked foundation, and was irrelevant, conclusionary and immaterial. Maravilla requested the production of "sweep sheets" for the date of the accident, and the names of persons who swept the location, but the Dodgers responded that no such documents exist.

### THE TRIAL COURT'S RULING

The trial court overruled Maravilla's objections. It found that the declaration of Lon Rosenberg shows the particular measures taken to inspect the stadium. There is no dispute that (1) the Dodgers lacked actual knowledge of a dangerous condition; (2) Maravilla did not know how long the condition existed before his accident; (3) Maravilla has no evidence showing how the condition was created, speculating that the Dodgers negligently failed to clean up a spill; (4) Maravilla cannot identify a specific witness with knowledge of how long the condition existed; and (5) the Dodgers exercised reasonable care in inspecting the stadium. The court concluded that "[t]here is no evidence that Defendant had actual or constructive notice of the condition that allegedly caused Plaintiff's injury, or would have been able to discover the condition through the exercise of ordinary care." The court entered judgment for the Dodgers.

3

## DISCUSSION[1]

Summary judgment is proper if there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A moving defendant must show the existence of a complete defense, or that one or more elements of the plaintiffs' cause of action cannot be proven; the burden then shifts to the plaintiffs to show a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p).) On appeal, we independently examine the record and review the trial court's ruling de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

A business owner owes "a duty to exercise reasonable care in keeping [its] premises reasonably safe," but "is not an insurer of the safety of its patrons." (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205.) This entails "making reasonable inspections of the portions of the premises open to customers." (*Ibid.*) The key is whether the owner has "'"either actual or constructive knowledge of [a] dangerous condition or ha[s] been able by the exercise of ordinary care to discover the condition."'" (*Id.* at p. 1206.) The owner must have "notice of the defect in sufficient time to correct it." (*Ibid.*)

To establish liability, there must be "'evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.'"

---

[1] We invited supplemental briefing regarding the statute of limitations (Gov. Code, § 68081), pointing out that a plaintiff who slips and falls at a business must file a personal injury action within two years. (Code Civ. Proc., § 335.1; *Andonagui v. May Dept. Stores Co.* (2005) 128 Cal.App.4th 435.) Maravilla's complaint was filed four years and eight months after his claim accrued. Nevertheless, the Dodgers concede that it would be "unfair" to assert the statute of limitations owing the trial court's mistaken suppositions about the Dodgers' 2011 bankruptcy, which led to the court's dismissal of Maravilla's first lawsuit. Because the Dodgers waive the defense, we do not discuss it.

4

(*Ortega v. Kmart Corp.*, *supra*, 26 Cal.4th at pp. 1205-1206.) "In the context of a business owner's liability to a customer or invitee, speculation and conjecture with respect to how long a dangerous condition has existed are insufficient to satisfy a plaintiff's burden." (*Id.* at p. 1206.) A plaintiff may use circumstantial evidence—shown by the defendant's failure to conduct inspections of the premises—to create an inference that a dangerous condition existed long enough for it to be discovered. (*Id.* at pp. 1210-1211.) If a property owner "has taken care in the discharge of its duty, by inspecting its premises in a reasonable manner, then no breach will be found even if a plaintiff does suffer injury." (*Id.* at p. 1211.)

In the *Ortega* case, the plaintiff slipped and fell in a puddle of milk on the floor adjacent to a refrigerator. He sued for his injuries. Kmart's store manager testified employees usually walked up the aisle every 15 to 30 minutes; however, he admitted that the milk could have been on the floor for as long as two hours, and he had no idea whether the aisle was inspected at any time on the day that Ortega fell. The jury verdict in favor of Ortega was affirmed because he demonstrated that the site was not inspected within a reasonable time. (*Ortega v. Kmart Corp.*, *supra*, 26 Cal.4th at pp. 1204-1205.)

There is no evidence that the Dodgers had actual knowledge of the fallen foodstuff in the aisle where Maravilla fell. This leaves the question of constructive knowledge. The vice-president in charge of stadium operations, Lon Rosenberg, declared that the stadium is swept and hosed down before a game, and Rosenberg and his staff walk through the stadium to inspect for hazardous conditions. During the game, numerous employees inspect the premises "constantly," to report and immediately clean up spills and substances that might create a hazard.

The trial court properly overruled Maravilla's objections to the Rosenberg declaration. As the maintenance supervisor, Rosenberg had personal knowledge of the measures deployed to clean stadium aisles before, during and after a game, and knew how many people were assigned to surveying the stadium for hazards on a constant basis, as well as their responsibilities to immediately clean up any spills. "Personal knowledge means a present recollection of an impression derived from the exercise of the witness's

5

own senses." (*Alvarez v. State of California* (1999) 79 Cal.App.4th 720, 731; Evid. Code, § 702.) It has long been the rule in this state that a witness who has "immediate supervision and control of [ ] particular work" is competent and qualified to testify about it. (*Fernholtz Machinery Co. v. Wilson* (1931) 118 Cal.App. 573, 580; *Luitweiler etc.Co. v. Ukiah Water etc. Co.* (1911) 16 Cal.App. 198, 209.)

Evidence of habit or custom is admissible to show lack of negligence on a particular occasion. (Evid. Code, § 1105; *Snibbe v. Superior Court* (2014) 224 Cal.App.4th 184, 190-191.) Rosenberg could testify about the Dodgers' custom with respect to stadium cleaning and inspections. If Maravilla wanted to delve into the scope of Rosenberg's knowledge of maintenance operations, he could have requested a continuance to take Rosenberg's deposition. (Code Civ. Proc., § 437c, subd. (h).) The Dodgers met their burden of showing a lack of actual or constructive knowledge of the spilled food because the stadium is inspected "constantly" for spills and hazards.

Once a defendant shows that a cause of action has no merit because the elements cannot be established, the burden shifts to plaintiff to show the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.) Maravilla acknowledges his "burden of producing evidence that the dangerous condition existed for at least a sufficient time to support a finding that the defendant had constructive notice of the hazardous condition," citing *Perez v. Ow* (1962) 200 Cal.App.2d 559, 561.

As the trial court noted, Maravilla did not proffer any evidence rebutting the Dodgers' undisputed facts. There was no attempt to show that Dodgers employees did not constantly monitor or patrol the stadium during games, cleaning up spills. The uncontradicted testimony of a witness to a particular fact—in this case, Dodgers' executive Lon Rosenberg—must be accepted as proof of the fact, as it is not inherently improbable. (Evid. Code, § 411; *Joseph v. Drew* (1950) 36 Cal.2d 575, 579; *DeMiglio v. Mashore* (1992) 4 Cal.App.4th 1260, 1270.)

Maravilla admittedly had no idea how long the food was lying on the ground. His speculation that the food could have been there "a long time"—because the game was in

6

the seventh inning—is pure conjecture, as was his "impression" that the items had been walked on.  Plaintiff stepped on the items, but there is no evidence that anyone else did so.  The items could have been deposited moments before Maravilla arrived.  He could not identify any eyewitness with knowledge that the food lay there long enough that the Dodgers' staff could reasonably have discovered it and removed it.  Maravilla has not shown a triable issue of material fact because there is no evidence that the Dodgers had actual or constructive knowledge of a dangerous condition on their property.

Finally, Maravilla's opposition to summary judgment was procedurally deficient.  He was required to "unequivocally state whether [each] fact is 'disputed' or 'undisputed' [and] on the right side of the page directly opposite the fact in dispute, the nature of the dispute and describe the evidence that supports the position that the fact is controverted.  That evidence must be supported by citation to exhibit, title, page, and line numbers in the evidence submitted."  (Cal. Rules of Court, rule 3.1350(f).)  Maravilla failed to observe any of these requirements.  Instead, he impermissibly raised objections in his separate statement, in violation of rule 3.1354(b) of the Rules of Court.  Procedural noncompliance was a sufficient ground for overruling all of Maravilla's objections and granting the Dodgers' motion.  (Code Civ. Proc., § 437c, subd. (b)(3); *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 7-9.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

7