Filed 4/5/23 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MOSS GROPEN, | D080950 |
| Petitioner, | (San Diego County Super. Ct. No. 37-2021-00030296-CU-MM-NC) |
| v. | |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | ORDER MODIFYING OPINION |
| CYRUS SHABRANG et al., | NO CHANGE IN JUDGMENT |
| Real Parties in Interest. | |

THE COURT:

It is ordered that the opinion filed herein on March 30, 2023, be modified on page 12, footnote 8, correcting the website to read as follows:

(Accommodations For Persons With Disabilities Using Court Facilities, <https://www.sdcourt.ca.gov/sdcourt/generalinformation/ada> [as of April 5, 2023], archived at <https://perma.cc/T3HC-ZPUS>.)

There is no change in the judgment.

HUFFMAN, Acting P. J.

Copies to:  All parties

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MOSS GROPEN,<br><br>       Petitioner,<br><br>       v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>       Respondent;<br><br>CYRUS SHABRANG et al.,<br><br>       Real Parties in Interest. | D080950<br><br>(San Diego County<br>Super. Ct. No. 37-2021-00030296-CU-MM-NC) |

ORIGINAL PROCEEDING on a petition for a writ of mandate. Relief granted.

McMahon Lynch Law Firm and Robert J. Lynch for Petitioner.

No appearance for Respondent.

Peabody & Buccini, Thomas M. Peabody, and Aaron D. Burden for Real Parties in Interest.

Moss Gropen brought suit against, among other defendants, Cyrus Shabrang and Michael Noud (Shabrang and Noud together as Real Parties in Interest) arising out of Gropen's treatment at a hospital. After the filing of an amended complaint, a demurrer, and some discovery issues, Real Parties

in Interest noticed Gropen's deposition.[1]  Gropen appeared at the noticed deposition with his wife Laura Gropen.[2]  Defense counsel objected to Laura's presence at the deposition because she is a percipient witness in the action and could be deposed in the future.  Gropen's deposition did not proceed beyond the parties stating their objections on the record.

Real Parties in Interest subsequently filed a motion for protective order and sanctions, asking the court to exclude Laura from Gropen's deposition. At the hearing on the motion, Gropen's counsel explicitly requested under California Rules of Court, rule 1.100,[3] that accommodations be provided to Gropen because he was suffering from Post-Traumatic Stress Disorder (PTSD), a recognized disability under the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.).  To this end, counsel proposed that Laura be present at Gropen's deposition as her presence provides a calming effect and helps to stave off Gropen's PTSD.  This was the first time Gropen had specifically invoked Rule 1.100.  The court acknowledged that PTSD fell under the ADA but found Gropen's request for an accommodation untimely. It thus granted the protective order and sanctioned Gropen.

Gropen timely filed this petition for a writ of mandate, arguing that the superior court abused its discretion in granting the protective order and erred by not considering the evidence that Gropen was diagnosed with PTSD. Gropen also maintains that his request that Laura attend his deposition is a

---

[1]    This was the second time Gropen's deposition had been noticed.  The first deposition was taken off calendar.

[2]    To avoid confusion, we refer to Gropen's wife by her first name.

[3]    All references to Rule or Rules are to the California Rules of Court.

reasonable accommodation that will limit the expected harm that will occur when he is asked about events that gave rise to his PTSD.

We conclude that Gropen's request for an accommodation under Rule 1.100 was timely, and the court abused its discretion by failing to consider his request. As such, we will grant the requested relief and remand this matter back to the superior court with instructions to deny the motion for protective order and sanctions and properly consider Gropen's request under Rule 1.100.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 2021, Gropen filed a first amended complaint, naming Palomar Medical Center, Kenneth Trestman, Fang Wu, Danielle Greer, and Real Parties in Interest as defendants.[4] The operative complaint contains two causes of action: negligence and false imprisonment. Gropen alleges he checked into Palomar Medical Center for a prescheduled appointment for a thoracentesis. He also was experiencing back pain at that time. Gropen claims the treating doctor refused to perform a thoracentesis and sent Gropen to the emergency room. Eventually, Gropen was admitted "with a large loculated right pleural effusion with atelectasis of the middle and lower lobe."

Gropen avers that he was never treated for his back pain. Rather, he was kept isolated in the hospital and had a chest tube placed. He was put in a room with no windows and had limited contact with medical personnel and no contact with his family. He received "substandard nutrition" and suffered "iatrogenic delays" in urination and defecation, causing extreme rashes and soiling. Gropen was in agony and "suffered uncontrollable sobbing and anxiety." Although psychiatric care was requested, none was provided. Accordingly, Gropen suffered PTSD and extensive physical pain.

---

[4]     Trestman, Wu, Greer, and Real Parties in Interest are medical doctors.

3

On February 24, 2022, Wu and Greer served a deposition notice for Gropen, noticing his deposition for April 7, 2022. However, the deposition was taken off calendar at the end of March. The parties subsequently met and conferred about scheduling the deposition and agreed that Gropen would sit for a deposition on July 7, 2022. To this end, Real Parties in Interest noticed Gropen's deposition.

Gropen appeared for his deposition on July 7 along with his attorney and his wife. Counsel for Real Parties in Interest informed Gropen's attorney that Laura would not be permitted to attend the deposition because she was not a party in the case and had been identified as a witness. All defense counsel objected on the record regarding Laura's presence at the deposition. Gropen's attorney explained that Laura's "presence is both necessary and allowed. Necessary in that she needs to be here to aid . . . . Gropen on mental health issues. Her presence is necessary for the moral support necessary as a result of the injuries sustained, and you will find out that the calming effect of her presence is absolutely necessary for him to go forward." Gropen refused to move forward with the deposition without Laura present. Real Parties in Interest's counsel then indicated that he would move for a protective order.

As promised, Real Parties in Interest filed a motion for protective order and a request for sanctions. They argued a protective order excluding Laura from the deposition was necessary and appropriate to prevent collusive testimony. Real Parties in Interest requested sanctions in the amount of $3,090.

In opposing the motion for a protective order, Gropen described that he suffers from PTSD (to the point of having suicidal thoughts), which is triggered when he is asked to discuss his experiences in the hospital leading

4

to the instant lawsuit. When he is experiencing PTSD, Gropen explained that "[t]he presence of [his] wife nearby has a calming effect and lessens the experience for [him]."

Before the hearing on the motion for protective order, the court issued a tentative ruling granting the protective order and awarding sanctions.

At the hearing on the motion for protective order, Gropen submitted a declaration from Dr. Stephen Signer. Signer is a practicing psychiatrist who is currently treating Gropen for PTSD. Signer indicated that Gropen's "PTSD is triggered by certain stressors, including questioning by others related to the incidents that lead up to his trauma." Singer opined that a deposition of Gropen would "more likely than not" trigger his PTSD. Singer also noted that Laura's presence has "an ameliorative affect" on Gropen and recommended that she should be present during Gropen's deposition "to lessen the impact of the triggering event." Gropen's attorney explained that he did not obtain Signer's declaration until the night before the hearing.

Gropen's attorney also pointed out that PTSD is a recognized disability under the ADA, and, per Rule 1.100, Gropen had the right to a reasonable accommodation. Gropen's attorney maintained that Laura's presence at Gropen's deposition was a reasonable accommodation.

The court observed that Gropen's attorney was providing "new information" that was not discussed or mentioned at the time of the deposition or in Gropen's opposition to the motion for protective order. The court indicated that it was "very familiar with PTSD" and did not "need to know the symptoms and all that stuff." However, the court found that Gropen's request for an accommodation under Rule 1.100 was "untimely" because the hearing was taking place after the initial attempt to depose Gropen.

Gropen's attorney explained that he did not specifically mention Rule 1.100 or request an accommodation because he had "made the argument that [Gropen] had PTSD . . . [and] . . . believe[d] that was self-evident that it ha[d] to require the weight of deference to having an accommodation for it." Counsel also emphasized that the request for an accommodation (Laura's presence at the deposition) was made in the opposition.

The court responded as follows:

> "Okay. But – yes, you made it clear you wanted his wife there at the deposition. It was clear in your opposition that you wanted the wife there. But the reason for it that you're stating for the first time today was not mentioned at the deposition on July 7 nor was it mentioned in your papers."

When it became clear that the court was going to adopt its tentative ruling, Gropen's counsel then requested that the court reduce the amount of sanctions after considering "the degree of pain that . . . Gropen experiences without having his wife there." The court remained unpersuaded:

> "Okay. All right. Well, so, you know, I—I'm kind of at a loss for words because this is all been brought out today for the first time with ADA claims and claims of PTSD. There is no formal diagnosis before the Court. There is no—look, I—I agree the Court needs to make reasonable accommodations under the ADA. I have seen nothing that would suggest that accommodations are necessary, that he has PTSD, other than what I've heard today for the very first time.
>
> "And it was mentioned in the briefing. It was not mentioned at the deposition. And nor does it—is there any declaration or indication that having the wife present would solve the problem or accommodate him to the point where he would be able to give deposition testimony.
>
> "So . . . [t]he Court will affirm the tentative ruling. The Court finds that imposition of sanctions in this case is not

6

unjust given the fact that we had all these lawyers showing up and we had a deposition that was planned.

"And what concerns me and makes the imposition of sanctions just and not unjust is the fact that this was a surprise. All counsel showed up and they—they were given no notice. And my understanding is the wife is a witness in this case and she wants to attend the deposition testimony. That's something that should have been discussed among counsel beforehand. And so for those reasons the Court will impose the sanctions."

In its minute order dated August 26, 2022, the court explained that Real Parties in Interest had proven good cause had existed to exclude Laura from Gropen's deposition to prevent the possibility of " 'collusive testimony.' "

Gropen timely brought this petition for a writ of mandate. We issued a stay of Gropen's deposition as well as the August 26 minute order and requested an informal response to the petition. Real Parties in Interest filed an informal response. We subsequently issued an order to show cause why relief should not be granted. Real Parties in Interest then filed a return.

DISCUSSION

Relief by writ of mandate is appropriate to correct a trial court order that constitutes an abuse of discretion. (*Bab v. Superior Court* (1971) 3 Cal.3d 841, 851; *Los Angeles Gay & Lesbian Center v. Superior Court* (2011) 194 Cal.App.4th 288, 299.) Further, Rule 1.100(g)(2) explicitly permits an applicant for an accommodation under Rule 1.100 to file a petition for writ of mandate if the court denies such a request. Here, Gropen contends the court abused its discretion by denying him a reasonable accommodation for his deposition, under Rule 1.100, to address his disability of PTSD. The instant petition therefore is the proper mechanism in which to request relief. (See Rule 1.100(g)(2).)

7

Rule 1.100 states and implements the policy of the California courts to "ensure that persons with disabilities have equal and full access to the judicial system." (Rule 1.100(b).) The rule establishes a procedure for a disabled person to request an accommodation. Rule 1.100(a)(3) defines accommodations as "actions that result in court services, programs, or activities being readily accessible to and usable by persons with disabilities. Accommodations may include making reasonable modifications in policies, practices, and procedures; furnishing, at no charge, to persons with disabilities, auxiliary aids and services, equipment, devices, materials in alternative formats, readers, or certified interpreters for persons who are deaf or hard-of-hearing; relocating services or programs to accessible facilities; or providing services at alternative sites. Although not required where other actions are effective in providing access to court services, programs, or activities, alteration of existing facilities by the responsible entity may be an accommodation."

Under Rule 1.100(c)(1), requests for an accommodation "may be presented ex parte on a form approved by the Judicial Council, in another written format, or orally." Requests "must include a description of the accommodation sought, along with a statement of the medical condition that necessitates the accommodation. The court, in its discretion, may require the applicant to provide additional information about the medical condition." (Rule 1.100(c)(2).) An applicant must submit a request at least five court days before the requested implementation date, although the court may waive the requirement. (Rule 1.100(c)(3).) Requests are to be forwarded to the court's ADA coordinator. (Rule 1.100(c)(1).)

Once the request is submitted, the court "must consider, but is not limited by, California Civil Code section 51 et seq., the provisions of the

Americans With Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.), and other applicable state and federal laws."  (Rule 1.100(e)(1).)

The court may deny a request for an accommodation only when it determines that:  (1) the applicant fails to satisfy the requirements of the Rule; (2) the requested accommodations "would create an undue financial or administrative burden on the court"; or (3) the requested accommodation "would fundamentally alter the nature of the service, program, or activity." (Rule 1.100(f); *In re Marriage of James and Christine C.* (2008) 158 Cal.App.4th 1261, 1273.)

In the instant action, Real Parties in Interest do not challenge Gropen's claim that he suffers from PTSD.  Moreover, since the inception of the instant action, Gropen has maintained that he suffers PTSD.  Accordingly, in the first amended complaint, he alleges:  "[Gropen] suffered, and continues to suffer documented . . . PTSD."  In opposing the motion for protective order, both Gropen and his wife filed declarations stating that Gropen had been diagnosed with PTSD.  And the psychiatrist treating Gropen submitted a declaration stating that Gropen suffers from PTSD and sitting for a deposition would most likely trigger Gropen's PTSD.

The ADA provides protection to individuals who can show they are "disabled," which is defined as someone who has a physical or mental impairment that substantially limits a major life activity, has a record of such impairment, or is regarded as having such an impairment.  (42 U.S.C. § 12102(1).)  Under an amendment to the ADA in 2008, the definition of disability was expanded to include a mental impairment that "substantially limits" one or more major life activities, such as concentrating, thinking, and communicating.  (42 U.S.C. § 12102(1)(A) & (2)(A).)  Among other state and local agencies, the Equal Employment Opportunity Commission (EEOC)

9

enforces the ADA. The EEOC's implementing regulations specify that some impairments will, in "virtually all cases," result in a determination of coverage under the ADA. (29 C.F.R. § 1630.2(j)(3)(ii).) The regulations list certain impairments that substantially limit major life activities, and that list includes PTSD. (29 C.F.R. § 1630.2 (j)(3)(iii).) Indeed, the superior court seemed to acknowledge that PTSD is covered under the ADA during the hearing on the motion for protective order. Thus, it appears Gropen suffers from a disability for which he is entitled to an accommodation pursuant to Rule 1.100, unless one of the exceptions under Rule 1.100(f) apply.

Yet, Real Parties in Interest argue that Gropen forfeited his request for an accommodation under Rule 1.100 because he did not comply with the procedure for requesting accommodations. Additionally, they contend the superior court would have violated their due process rights if it had granted Gropen's request for an accommodation without allowing Real Parties in Interest a meaningful opportunity to be heard on the issue. Finally, Real Parties in Interest assert that, even if Gropen had properly raised the issue of an accommodation, the court did not abuse its discretion in denying the request because the requested accommodation (Laura's presence at Gropen's deposition) would fundamentally alter the nature of Gropen's deposition. (See Rule 1.100(f)(3).) We reject these contentions.

Relying on Rule 1.100(c), Real Parties in Interest claim that Gropen did not properly request an accommodation for his disability. The first sentence of subdivision (c)(1), provides that a request for an accommodation under Rule 1.100 can be made "ex parte on a form approved by the Judicial Counsel, in another written format, or orally." Here, it is clear, at the very least, that Gropen made the request orally at the hearing on the motion for a protective order. To this end, Gropen's attorney explicitly requested an accommodation

10

under Rule 1.100 for Gropen's deposition. Further, Gropen complied with Rule 1.100(c)(2) in that his counsel explained the accommodation Gropen sought (the presence of his wife at Gropen's deposition) as well as the medical condition (PTSD) that necessitates the accommodation.[5] And Gropen provided a declaration from the doctor treating him that included his diagnosis of PTSD as well as support for the requested accommodation.

Nevertheless, Real Parties in Interest gloss over Gropen's oral request for the accommodation and, instead, point to other requirements in Rule 1.100. Accordingly, Real Parties in Interest assert that Rule 1.100(c)(1) requires all requests to be forwarded to the ADA coordinator as soon as possible or at least five court days before the event requiring accommodation.[6] However, there is no requirement that a party requesting an accommodation under Rule 1.100 forward such request to the ADA coordinator before making an oral request in court. Thus, we read nothing in subdivision (c)(1) that prohibited Gropen from first making an oral request for an accommodation or otherwise rendered that oral request invalid.[7]

Real Parties in Interest also note that San Diego County Superior Court follows local rule 1.2.1, Policy Against Bias and Access to Court

---

[5] Rule 1.100(c)(2) states: "Requests for accommodations must include a description of the accommodation sought, along with a statement of the medical condition that necessitates the accommodation. The court, in its discretion, may require the applicant to provide additional information about the medical condition."

[6] The second sentence of Rule 1.100(c)(1) provides: "Requests must be forwarded to the ADA coordinator, also known as the access coordinator, or designee, within the time frame provided in (c)(3)."

[7] We acknowledge that the superior court found Gropen's request untimely, which we will address *post*.

11

Services, which provides in part: "To ensure access to the courts for persons with disabilities, the court has appointed ADA coordinators at each of its facilities to address for accommodation. Such requests shall be made as far in advance as possible and pursuant to California Rules of Court, rule 1.100."

Further, Real Parties in Interest observe that the San Diego County Superior Court's website includes a tab entitled, "Accommodations For Persons With Disabilities Using Court Facilities," which details the process for requesting ADA accommodations from the superior court:

> "Accommodation requests are governed by Rule 1.100 of the California Rules of Court. Requests should be made by completing the Disability Accommodation Request (SDSC Form # ADM-410), which may be obtained at any court location and is available here [hyperlink]. The completed ADM-410 Form may be submitted to the ADA Coordinator's Office or the business office at the court location where the accommodation is needed."[8]

Real Parties in Interest point out that Gropen did not comply with local rule 1.2.1 or complete and submit the form as set forth on the San Diego County Superior Court's website. We conclude these suggested procedural shortcomings did not render Gropen's oral request for an accommodation insufficient.

We see nothing in the San Diego County Superior Court's local rules that creates any additional hurdle to requesting an accommodation under Rule 1.100(c)(1). Indeed, even if a local rule did so, we would disregard it. (See *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1352; *People v. Hall* (1994) 8 Cal.4th 950, 961-962; *California Court Reporters Assn. v. Judicial*

---

[8] (Accommodations For Persons With Disabilities Using Court Facilities, <https://www.sdcourt.ca.gov/sdcourt/generalinformation/ada>March __, 2023 archived at <https://perma.cc/_____>.)

12

*Council of California* (1995) 39 Cal.App.4th 15, 26-31.) Further, in reviewing the local rule, webpage, and form to which Real Parties in Interest direct us, it is clear that those sources are guiding parties who are asking for an accommodation at a particular court facility, courtroom, or department. Here, where the requested accommodation was for a future deposition, which presumedly will be taken in an office not the court, the local rules and San Diego County Superior Court's website are not particularly relevant. Although, perhaps, it would have been a better practice for Gropen to comply with local rule 1.2.1 and submit Form # ADM-410 along with his oral request, his failure to do so before making an oral request for an accommodation did not make his request invalid.

Rule 1.100 also contains a temporal component. Subdivision (c)(3) of this rule provides:

> "Requests for accommodations must be made as far in advance as possible, and in any event must be made no fewer than 5 court days before the requested implementation date. The court may, in its discretion, waive this requirement."

Below, the superior court declined to consider Gropen's accommodation request because it found the request untimely. Although Real Parties in Interest noted Rule 1.100, subdivision (c)(3), they did not spend much time in their briefs discussing the timeliness of Gropen's request. However, because the timeliness of the request was critical to the court's decision not to consider it, we turn to that issue now.

The superior court found Gropen's request untimely because he did not request an accommodation under Rule 1.100 while meeting and conferring with the defendants about the timing of his deposition, and he did not invoke Rule 1.100 in opposing the motion for a protective order. Yet, Gropen's failure to request an accommodation in either instance did not make his

13

request at the protective hearing untimely. All Rule 1.100 requires is that Gropen request an accommodation at least five court days before the subject event. (See Rule 1.100(c)(3).) At the hearing, Gropen asked for an accommodation at his upcoming deposition. There is no indication in the record that, at the time of the hearing, Gropen's deposition date was set within five court days of the hearing. Thus, under Rule 1.100(c)(3), the request was timely.

In hindsight, it would have been more efficient had Gropen raised the issue of his wife's presence at his first deposition before Real Parties in Interest noticed his deposition, but his failure to do so is not fatal to his cause here. Section 2025.420 of the Code of Civil Procedure provides a non-exhaustive list of issues a protective order can address regarding a deposition. One such area is that a protective order may decree "[t]hat designated persons, other than the parties to the action and their officers and counsel, be excluded from attending the deposition." (Code Civ. Proc., § 2025.420, subd. (b)(12).) Thus, the Code of Civil Procedure contemplates that third parties might attend a deposition of a party and provides a mechanism by which a party may get a court to exclude such third parties. Therefore, there is nothing in the Code of Civil Procedure that required Gropen to obtain permission of the parties or the court to allow Laura to attend his first deposition before he appeared at that deposition. In this sense, Gropen might not have raised the issue because the default rule under the Code of Civil Procedure was that his wife could attend his deposition. Because the defendants, including Real Parties in Interest, objected to Laura's presence, they moved for a protective order as specified in Code of Civil Procedure section 2025.420, subdivision (b)(12). Real Parties in

14

Interest's motion for a protective order, however, did not render Gropen's subsequent request for an accommodation under Rule 1.100 untimely.

Similarly, Gropen's failure to explicitly request an accommodation per Rule 1.100 in his opposition to the motion for a protective order did not forfeit his subsequent oral request or otherwise make it untimely. Again, the only requirement under Rule 1.100 regarding the time of making a request is that the request be made five court days before the subject event. Further, there is no requirement a request be made in writing or in written opposition to a motion for protective order. A request can be made orally.[9] (See Rule 1.100(c)(1).)

Based on the foregoing, we conclude that Gropen's request for an accommodation under Rule 1.100 was not untimely. Moreover, Gropen complied with the procedural requirements of Rule 1.100. Nevertheless, relying on *Vesco v. Superior Court* (2013) 221 Cal.App.4th 275 (*Vesco*) and claiming a violation of their due process rights, Real Parties in Interest maintain that the superior court could not have granted Gropen's request because they had not been provided with proper notice and a meaningful opportunity to be heard on the issue. Real Parties in Interest's reliance on *Vesco* is misplaced. Further, we find no due process violation on the record before us.

In *Vesco, supra*, 221 Cal.App.4th 275, the defendant filed a motion to continue trial because she needed urgent medical procedures. The trial court

---

[9] Although we determine that Gropen properly made an oral request for an accommodation under Rule 1.100 at the hearing on the motion for a protective order, it appears that Gropen's opposition and accompanying declarations stated that he suffers from PTSD and was requesting Laura attend his deposition to lessen the impact of his condition. Consequently, Gropen seemed to be requesting an accommodation for a disability but simply failed to explicitly invoke Rule 1.100.

denied the motion without prejudice to allow the defendant to refile the motion with supporting documentation. (*Id.* at p. 277.) Instead of refiling the motion, the defendant applied ex parte for an accommodation (a trial continuance) under Rule 1.100. The plaintiff was not provided with notice or a copy of the application until after the court granted the requested accommodation and continued the trial. (*Id.* at p. 278.) The plaintiff subsequently applied ex parte to examine and photocopy all documents in the trial court's possession concerning the defendant's request for an ADA accommodation. The court denied the application. (*Ibid.*) The plaintiff petitioned the appellate court for a writ of mandate to allow him access to the materials the trial court relied on to grant a trial continuance. The appellate court summarily denied the petition. Per an additional ADA accommodation request, the trial court again continued the trial. The plaintiff renewed his petition for a writ of mandate. (*Ibid.*)

The appellate court granted the plaintiff's requested relief. The court explained that the plaintiff had "the right to have his trial as soon as circumstances permit." Thus, the plaintiff could challenge the defendant's request for a continuance. As such, the court reasoned that the plaintiff "must be given notice and an opportunity to view the medical records and other material on which [the defendant] relies." (*Vesco, supra*, 221 Cal.App.4th at p. 280.)

Here, Real Parties in Interest insist their situation is analogous to the plaintiff's circumstances in *Vesco*. They compare their "fundamental right to an objective deposition of" Gropen to the plaintiff's right to trial as soon as circumstances permitted in *Vesco*. Real Parties in Interest's argument is off the mark. The issue the plaintiff sought to address in *Vesco* was the trial court's refusal to allow him to review the documents and evidence supporting

16

the trial court's multiple continuances of the trial date. (See *Vesco*, *supra*, 221 Cal.App.4th at pp. 279-280.) Here, there is no analogous concern. Real Parties in Interest are privy to all the evidence on which Gropen relies to request an accommodation. Indeed, the claim that Gropen suffers from PTSD has been known since the inception of the suit. Moreover, it was clear in the opposition to the motion for a protective order that Gropen was seeking to have Laura at his deposition. Thus, Real Parties in Interest had sufficient notice regarding the requested accommodation. And they argued against the court allowing that accommodation by way of their motion for a protective order.

Nonetheless, we acknowledge that Real Parties in Interest were not specifically informed, until the date of the hearing on their motion for protective order, that Gropen was seeking an accommodation under Rule 1.100. However, Rule 1.100 explicitly allows a party to orally request an accommodation. Thus, we fail to see any fundamental due process issue had the superior court considered Gropen's request at the hearing. Our conclusion is buttressed by the fact that Real Parties in Interest were given the opportunity to address Gropen's argument under Rule 1.100 at the hearing on the motion for a protective order. They did not need to do so because the court found Gropen's request untimely and did not consider it. Against this backdrop, we struggle to find the denial of due process that Real Parties in Interest claim.

Finally, Real Parties in Interest insist that even if we determine that Gropen adequately made a request for an accommodation under Rule 1.100, the court nevertheless did not abuse its discretion in denying the request because it agreed with Real Parties in Interest's argument that Laura's presence at Gropen's deposition "may lead to 'collusive testimony,' and that,

17

as a percipient witness to the events herself, her sitting in on her husband's deposition may taint her own testimony when she is deposed." Real Parties in Interest interpret the court's granting of a protective order akin to a finding that Gropen's requested accommodation would fundamentally alter the nature of Gropen's deposition, which they note "is a proper basis for denial of an accommodation request under Rule 1.100(f)." We disagree.

Although Rule 1.100(f)(3) states that a court may deny an accommodation request if "[t]he requested accommodation would fundamentally alter the nature of the service, program, or activity[,]" here we do not consider Rule 1.100(f)(3) because the superior court never evaluated the merits of Gropen's request for an accommodation under Rule 1.100. As we discussed *ante*, the court found the request to be untimely. Accordingly, the court did not contemplate whether Laura's presence at Gropen's deposition "would fundamentally alter the nature of [that] . . . activity." (See Rule 1.100(f)(3).)

Additionally, this does not appear to be a situation wherein Laura's presence at Gropen's deposition would trigger Rule 1.100(f)(3). The only concern that Real Parties in Interest have offered about Laura's presence at Gropen's deposition is that Laura and Gropen could collude with each other at Laura's subsequent deposition. However, a pragmatic and somewhat painless way to address Real Parties in Interest's concern would be to take Laura's deposition before Gropen's deposition and prohibit Gropen from attending Laura's deposition. Another possible solution would be to have Laura present at Gropen's deposition but be unable to hear the questions (perhaps she could wear noise cancelling headphones). We offer these two possible accommodations merely as examples of simple, manageable solutions to the parties' dispute. We trust that the parties, with the help of the

18

superior court, can fashion an accommodation that sufficiently protects all the parties' respective interests here.

In short, we conclude the superior court abused its discretion by failing to consider Gropen's oral request for an accommodation under Rule 1.100. (Cf. *In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515.) As such, we grant Gropen's request for relief and remand this matter back to the superior court so that it can consider Gropen's request for an accommodation under Rule 1.100.

## DISPOSITION

The petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing the respondent superior court to (1) vacate its order granting Real Parties in Interest's motion for protective order and sanctions and (2) consider Gropen's request for an accommodation for his disability under Rule 1.100. The stay issued September 29, 2022 is vacated. All parties shall bear their own costs associated with this writ.

In the interest of justice, this opinion is deemed final as to this court forthwith. (Rule 8.490(b)(2)(A).)


HUFFMAN, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.

19